No. 30,073.

LEWIS WALLACE. et al., *Appellees*, v. ART WEBER, *Appellant*.

(5 P. 2d 855.)

Opinion filed December 12, 1931.

*Clark A. Wallace,* of Kingman, for the appellant.
*S. S. Alexander,* of Kingman, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This was a proceeding in habeas corpus brought by Lewis Wallace, a minor, and by his mother as guardian, to release Lewis from imprisonment. The district court after a hearing decided that the prisoner should be released, and stated in substance that the record of the proceedings was so imperfect that it was hard to find what occurred, and that there were so many irregularities and invalidities that the court felt impelled to discharge the petitioner. The city marshal, Art Weber, appeals.

The controversy and the proceedings referred to arose in the village of Norwich, where the petitioner resided with his mother, Ida Wallace. He was a pupil of the high school of Norwich and on May 16, 1930, when commencement exercises were in progress and the pupils and some of their friends had congregated on the school grounds, and among them Art Weber, the city marshal, it is alleged that Wallace used loud, violent and profane language, whereupon Weber placed him under arrest. He was taken by the city marshal before the police court of Norwich, and it is charged that without

a proper complaint or warrant he was placed upon trial. At an informal sort of hearing the police court adjudged Wallace guilty of disturbance of the peace. A fine was imposed and an order made that he should be committed to jail until the fine was paid. Within a few hours after the judgment was rendered the court ordered a temporary release in order that Wallace might attend the graduating exercises, as he was a member of the graduating class, but afterwards he was returned to jail.

In connection with this proceeding it appears that Wallace vigorously protested against the action taken on the charge of disturbing the peace, and the police court ruled that he used violent and abusive language as to the city marshal, who made the arrest, and also as to the police judge, calling them opprobrious names. Thereupon the police judge declared him to be guilty of contempt and ordered him committed to jail on that charge, and also imposed a fine of $10.

Upon the record presented the district court in effect determined that the proceedings in the police court in the contempt matter were invalid in that the required entries of record were not made before commitment, and the petitioner was entitled to a discharge for invalidity of the proceedings. The contempt charged was a direct one committed, it is alleged, in the presence of the court. As to that class of contempts the statute provides:

"That a direct contempt may be punished summarily, without written accusation against the person arraigned, but if the court or judge in chambers shall adjudge him guilty thereof a judgment shall be entered of record, in which shall be specified the conduct constituting such contempt, with a statement of whatever defense or extenuation the accused offered thereto, and the sentence of the court thereon." (R. S. 20-1203.)

In indirect contempts it is necessary that there be a written accusation, a warrant of arrest, an answer of the accused and an opportunity to defend with an adjudication that a contempt had been committed. These are essential to a valid order assessing punishment. They are jurisdictional in their nature and in the absence of an essential requirement the adjudication will be void. A written accusation on a contempt committed in the face of the court is not required, nor is evidence necessary, as the judge knows what transpired in his presence, but as a substitute for the written accusation, warrant or other statutory requirement for the protection of the accused, the statute provides that the judge shall enter of record the conduct constituting the contempt, together with a statement of

whatever defense the accused made, and the judgment rendered. (*State v. Anders,* 64 Kan. 742, 68 Pac. 668.) This, too, is jurisdictional in character and enables the accused to have a test or review in a superior court of the validity of the judgment pronounced. The proceeding in a direct contempt is summary, of an arbitrary nature and might be subject to abuse and hence the legislature has required that the court or judge shall make these entries before the contemner shall be sent to jail or otherwise enforce the conviction and judgment. The making of the required entries is essential to the validity of the conviction, and the mere statement that the accused was guilty of contempt without specifying the acts constituting the contempt and the defense presented is insufficient to a valid order of commitment. (*In re Moxcey,* 9 Kan. App. 262, 59 Pac. 672; *In re Elliott,* 9 Kan. App. 265, 59 Pac. 673; 13 C. J. 84.)

In other states, where there are somewhat similar statutes, the courts have held that in a summary proceeding for a direct contempt a statement of the facts upon which the order of commitment is founded is necessary to the validity of the order. In *State v. Dist. Court,* 124 Ia. 187, there was a conviction on a charge of contempt based on the use of insulting and scandalous language by an attorney in the presence of the court. In speaking of the purpose of the statute requiring a record showing the contempt it was said:

"In the nature of things, the authority of the court to punish for contempt is somewhat summary in character, and due regard for its dignity requires that insolence or disorder in its presence should be promptly rebuked and punished. On the other hand, the liberty of the individual is jealously guarded against an oppressive or capricious exercise of such authority; and, for the protection both of the court and of the individual, it is made imperative that the particular act done or words spoken in alleged contempt shall be, in substance, preserved in the record, in order that upon review of the judgment the appellate tribunal may be put in possession of an accurate history of the case from its inception. A failure to preserve such record we have held sufficient ground for reversing a judgment assessing punishment for contempt." (p. 190.)

In a later Iowa case it was held that on the failure to file a statement in the record of the basis for the order, prior to the commitment, the order shall be void. (*State v. District Court,* 133 Ia. 450.)

The case of *In re Shortridge,* 5 Cal. App. 371, was a contempt proceeding where an attorney was held for contempt by interrupting the proceedings of the court, but in which the court did not make a record of what was said and done by the accused in the interrup-

tion, and the court remarked, quoting from an earlier California case:

"'The power of the court to punish for an alleged contempt of its authority, though undoubted, is in its nature arbitrary, and its exercise is not to be upheld except under the circumstances and in the manner prescribed by law. It is essential to the validity of proceedings in contempt, subjecting a party to fine and imprisonment, that they show a case in point of jurisdiction within the provisions of the law by which such proceedings are authorized, for mere presumptions and intendments are not to be indulged in their support.' (*Batchelder v. Moore,* 42 Cal. 415.)" (p. 375.)

That court held that if the record does not affirmatively show the facts upon which jurisdiction depends, the order is void. (See *In re Lake,* 65 Cal. App. 420; *In re Dunbar,* 49 N. D. 851; *Ex Parte Dawes,* 31 Okla. Cr. 397; *Cress v. State,* 14 Okla. Cr. 521; *State, ex rel. Rankin, v. District Court,* 58 Mont. 276.)

When the accused was first arrested for disturbing the peace he applied for a continuance that he might obtain counsel, but this was refused. After the accused had been adjudged guilty of contempt and counsel had been obtained, the counsel visited the police court and examined the records there, and found that no record had been made by the police court as required by the statute, and it also appears that the commitment itself did not state the facts upon which the contempt judgment was founded. Later an attempt was made to amplify the record. It was shown that Weber, the city marshal, had made entries in the police court docket and still another person other than the judge, named Keller, had made some entries in it. On May 28, and about the time the habeas corpus proceeding was begun, an elaborate report purporting to show the proceedings of May 16, 1930, at Norwich, was presented. This was done in Kingman many days after the commitment and when the police judge was outside of his jurisdiction and hence without authority to amend his record.

Because of these and other matters of invalidity the district court came to the conclusion that the order of commitment was invalid and ordered a discharge of the petitioner. Under the authorities and the defects in the proceedings for contempt the court was justified in holding that the commitment was invalid, and in releasing the accused.

The judgment is affirmed.