No. 36,442

In the Matter of the Application of Thurston Gambrell for a Writ of Habeas Corpus. (THURSTON GAMBRELL, *Appellant*, v. KEITH MOORE, Sheriff, et al., *Appellees*.)

(164 P. 2d 122)

Opinion filed December 8, 1945.

*Claude E. Sowers*, of Wichita, argued the cause for the appellant.

*L. M. Kagey*, of Wichita, argued the cause for the appellees.

The opinion of the court was delivered by

HARVEY, C. J.: This was a habeas corpus proceeding in which the trial court denied the writ. The petitioner has appealed.

The facts disclosed by the record may be stated as follows: In April, 1945, there was pending in the district court of Sedgwick county, Division No. 2, Hon. Robert L. NeSmith, judge, a case entitled *State v. Albert E. Reed*, in which defendant had been charged with a misdemeanor, had entered a plea of guilty, and had been paroled. It was one of the conditions of his parole that he

should report to the court on the first day of each term of court pending the duration of the parole. At the time of his parole he had given the court the name of his mother-in-law, Hattie Hill, and her address and telephone number, as the person to call in making any inquiry of him. Under a statute (Laws 1945, ch. 182) then in force, the bailiff of each division of the district court in Sedgwick county acts as a parole officer for such division. His duties as such parole officer are to assist the judge in having the provisions of paroles and probations fully complied with. On the opening day of the April, 1945, term of the court Albert E. Reed did not report, as required by his parole, and the judge of the court instructed his parole officer, Mr. R. M. Glass, to ascertain Reed's whereabouts. The parole officer attempted to do so, without success, and later filed an affidavit as to what occurred, which disclosed that he called Hattie Hill on the telephone, and recites:

"Said affiant further states that Hattie Hill answered said phone and before he could inquire relative to the whereabouts of said above named defendant, Albert E. Reed, said phone was jerked or taken from the hands of said Hattie Hill by a man whose name, so this affiant is informed and believes, and therefore, asserts the fact to be, Thurston Gambrell, of Hutchinson, Reno County, Kansas, that said Thurston Gambrell used vile and abusive language toward this affiant and among other things, stated, before affiant could inform said Thurston Gambrell who he was, or why he had called—'What the hell do you want with him?'; that said Thurston Gambrell talked in a loud and apparently violent tone, refusing to permit affiant to state the reason he was calling, and finally stated: 'Go to Hell' and hung up the receiver."

The affidavit further stated that the actions and remarks of Gambrell constituted contempt of court, and prayed that an attachment or other legal process be issued for him to be brought before the court, there to be proceeded against for contempt. Upon the filing of this affidavit an attachment was issued by the clerk of the court, directed to the sheriff of Reno county, commanding him to attach Gambrell and have him brought before the court to be then and there proceeded against for contempt, as shown by the affidavit of the parole officer. Gambrell was brought before the court and the proceedings there are shown by the following order:

"Now on this 23rd day of April, 1945, the above matter comes on for hearing upon the affidavit of R. M. Glass accusing Thurston Gambrell of contempt of court as set forth in the affidavit heretofore filed, said R. M. Glass appearing in person; Thurston Gambrell appearing in person.

"Thereupon, the court inquired of Thurston Gambrell if he desired to file an answer to the accusation set forth in the affidavit, or desired to employ

counsel to represent him, and upon being informed by said Thurston Gambrell that he did not desire counsel nor did he desire to file an answer, said matter proceeded to trial.

"Thereupon the evidence of R. M. Glass, parole officer of the above named court, was introduced in evidence, and the testimony of Hattie Hill heretofore given was also introduced in evidence: Thereupon said Thurston Gambrell informed the court that his name was Thurston Gambrell, and said Thurston Gambrell introduced his evidence and rested; and the court, having heard the evidence, and being fully advised in the premises, finds:

"That said Thurston Gambrell is in contempt of court.

"It Is Therefore Ordered, that said Thurston Gambrell be taken by the sheriff of Sedgwick county to the Sedgwick county jail and there to be confined for a period of twenty (20) days."

Gambrell was committed to jail by virtue of the order, and soon thereafter filed his petition for a writ of habeas corpus for his discharge, alleging that he was unlawfully restrained of his liberty by the sheriff and that the imprisonment was illegal and void for the reason that he was not a party to the case of the *State v. Reed*, was not under a process, order or obligation of the court or parole officer, and that the court had no jurisdiction in the contempt proceedings. This petition was assigned to Division No. 3 of the court, Hon. Clair E. Robb, judge, who issued a writ to have Gambrell brought before him. After a hearing, at which the petitioner appeared in person and by counsel and the parole officer appeared in person and by an assistant county attorney, an order was made which recited those facts, and continued, "and the court, having examined into the pleadings, finds that the writ of habeas corpus · should be denied." The petitioner promptly appealed and was permitted to give bond in the sum of $200 pending the appeal.

In support of the judgment of the court below denying the writ of habeas corpus it is argued that the contempt for which the petitioner was committed to jail was a direct contempt as distinct from an indirect contempt, and that the procedure outlined in the statute (G. S. 1935, 20-1203) was substantially complied with. We think neither point is well taken. The statute (G. S. 1935, 20-1202) reads:

"That contempts committed during the sitting of the court or of a judge at chambers in its or his presence, are direct contempts. All others are indirect contempts."

The petitioner here was not in court during a sitting of the court, nor before the judge at chambers, and no complaint is made of anything he did in the presence of the court or judge. Hence, there was no direct contempt. And G. S. 1935, 20-1203, which prescribes the

record to be made upon a hearing for direct contempt, among other things, provides:

". . . if the court or judge in chambers shall adjudge him guilty thereof a judgment shall be entered of record, in which shall be specified the conduct constituting such contempt, with a statement of whatever defense or extenuation the accused offered thereto, and the sentence of the court thereon."

The order of the court on the contempt proceedings contains no statement of the conduct constituting the contempt, neither does it contain a statement of whatever defense or extenuation the accused offered thereto. These matters are jurisdictional and the absence of them renders the order void. (See *Wallace v. Weber*, 134 Kan. 201, 5 P. 2d 855, and cases cited therein.)

Neither was the procedure relating to indirect contempts outlined by G. S. 1935, 20-1204, followed in full. No accusation was filed and no time given for the accused to answer. Neither was the evidence preserved. The order does state certain witnesses whose testimony was considered, but the testimony, or its substance, is not set out. Possibly the accused could have waived the filing of a formal accusation, but we do not have that question before us and it is not clear that he did so.

The statute (G. S. 1935, 20-1205) provides for review of contempt proceedings on appeal. In part it reads:

"That the testimony taken on the trial of any accusation of contempt shall be preserved, and any judgment of conviction therefor may be reviewed."

In this case the testimony was not preserved, hence the opportunity to have it reviewed on appeal was frustrated. Cases have reached this court, both on appeal and by habeas corpus. Because of the inadequacy of the record in this case the accused was justified in proceeding by habeas corpus. It has been held that habeas corpus by one committed for contempt raises jurisdictional questions only. Contempt is a proceeding somewhat arbitrary at the best, and the absence of essential proceedings in the record constitutes a showing of the lack of jurisdiction.

Counsel for appellant contends that the matter complained of does not constitute either direct or indirect contempt. When that question is raised the court has authority to examine the contemptuous language or acts and determine whether or not they are sufficient to constitute contempt. (See 39 C. J. S. 543, and cases there cited.) Without restating the language and conduct set forth in the affidavit of the parole officer we are convinced that it did not

constitute contempt of the court, either direct or indirect. The petitioner never knew who it was talking to him, or that he held any official position; nor did he understand what it was the person talking to him wanted. That may or may not have been the petitioner's fault, but the most we can see in the statement of his conduct and language is that he was discourteous to someone he did not know and who wanted to talk to him about some matter that he could not understand and which the person desired to talk about.

The result is that the judgment of the court below must be reversed with directions to discharge the prisoner. It is so ordered.