(11 P.3d 1187)

No. 84,027

No. 84,170

STATE OF KANSAS, *Appellee,* v. CECIL WILLIAMS, (ROWANA K. RIGGS, Respondent in Contempt Proceedings) *Appellant.*

Opinion filed October 27, 2000.

*Richard Ney,* of the Law Offices of Richard Ney, of Wichita, for appellant.

*Elizabeth Reimer,* assistant district attorney, *Nola Foulston,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before BEIER, P.J., ELLIOTT, J., and JACKSON, S.J.

BEIER, J.: Respondent-appellant Rowana K. Riggs appeals from her contempt citation, the sentence imposed, and an additional condition added later to her probation by the district judge. We reverse.

Riggs was a prospective juror in an underlying criminal case. The district judge asked the panel of prospective jurors to stand, raise their right hands, and be affirmed or take the oath to serve as jurors. Riggs did not stand; there is a dispute about whether she took the oath while sitting down. This exchange followed:

"THE COURT:   Ms. Riggs, did you stand up and be affirmed or take the oath? I couldn't see.

"[RIGGS]:   No, because I'm sitting here hurting in pain and, this here, I have carpal tunnel syndrome.

"THE COURT:   Okay.

"[RIGGS]:   This air in here is aggravating my condition.

"THE COURT:   Ma'am, if you'll come over here and have a chair, we'll talk to you a little bit later about that. Thank you very much.

"[RIGGS]:   Uh-huh. Plus your court reporter — I have a daughter — excuse me — a daughter that has a real major medical problem and I have way — all the way ticked because your court clerk downstairs told me that this here court procedure was more important than my child's health, so I'm really not in the best of mood.

"THE COURT:   Yeah. Well, I'm gonna have you just have a chair, and we'll get to you when we get through with the voir dire."

The judge's exchange with Riggs after the conclusion of voir dire was somewhat ambiguous. The judge told Riggs he found her to be in contempt of court for failing to take the oath as she was instructed. He then set a sentencing date and asked her repeatedly if she wanted an attorney. Riggs began to explain that she did not feel like standing because she was not feeling good and needed to take her medicine. The judge then set the date for the hearing 15 days later and suggested she bring medical records to corroborate what she was trying to say.

At the later hearing, the court began by stating that the proceeding followed a finding that Riggs was in contempt of court and asked if Riggs' attorney had anything to say on her behalf before sentence was imposed. Defense counsel argued that Riggs was not feeling well the day of the voir dire and pointed out that Riggs had stated on her jury card that she had carpal tunnel syndrome and had not taken her pain medication. Defense counsel also stated she had a doctor's letter and prescriptions in support of Riggs' statements. Counsel argued Riggs did not know she was acting in a

disrespectful manner toward the court, and she explained that Riggs had been worried because she was a single parent supporting two children, was employed by Boeing, and was involved in an ongoing worker's compensation case. The court was also informed that one of Riggs' daughters had recently suffered a miscarriage and the other daughter had been diagnosed with lumps in her breast.

The court also allowed Riggs to speak on her own behalf:

"No more than that I was in pain, severe pain at that time. And, other than that, I didn't mean no disrespect to you or the court. I didn't know that it would lead into this type of confrontation or this type of occurrence, however you would put it in that sense, by me not standing. It wasn't in no disrespect to you or the court.

"I was just in pain and hurting, and I had informed Miss Marvin that I had left my medicine down in my car which was parked a few blocks away and I needed to take it. I didn't mean no disrespect in her saying that I was trying to give her a hard time down there or what. But, if I don't take that medicine, the pain is very severe.

"And, other than that, that's about all I can say, your Honor. I didn't mean no disrespect to you or the court, and I didn't know that it would lead to this type of procedure."

The court responded:

"Well, your behavior was very contemptuous, and it was evident to the other panelists and to the jurors because, after the trial was over, when I was talking with the jury, they commented upon how rude you'd been and how disrespectful you'd been to the court."

The judge then sentenced Riggs to 30 days in jail and fined her $200; he placed her on nonreporting probation. The journal entry memorializing the hearing stated Riggs was in contempt for failure to stand and take oath as a prospective juror and stated her sentence. It did not state the defenses or extenuating circumstances raised by Riggs and her counsel at the hearing.

Approximately 2 months later, the judge ordered Riggs to appear for a formal review of the terms and conditions of her probation. The judge stated that the hearing was ordered because there seemed to be some problems with Riggs' understanding of the terms and conditions of her probation, "[s]o I think we better start

clarifying things a little more, delineate things a little bit more clearly for her."

The court inquired three times if the court services officer had any modification suggestions, and the officer said no three times. Finally, the officer said there had been a problem with the procedure for obtaining a travel permit. She suggested that requiring Riggs to report to the office in person might enhance her understanding of the terms and conditions of her probation.

Riggs' counsel argued, and the court agreed, that Riggs was not alleged to have violated her probation. When Riggs was told that she needed to prepare an itinerary in order to travel, she simply chose not to travel at all. Nevertheless, the court modified the conditions of probation to require Riggs to meet with her court services officer at least once a month.

Riggs appealed both the original contempt finding and sentence and the enhancement of the conditions of her probation. The appeals were consolidated.

Regarding the finding of contempt, Riggs makes two persuasive arguments. First, she says that her conduct, even assuming she remained sitting and failed to take the oath, was not contemptuous. Second, she says that the journal entry did not follow the requirements of K.S.A. 20-1203, which renders the finding of contempt void.

Our review of these two issues is de novo. See *State v. Pondexter*, 225 Kan. 425, 429, 590 P.2d 1074 (1979) (on appeal from direct contempt conviction, court examines language, actions of person convicted and determines anew if conduct sufficient to constitute contempt); *State v. Patterson*, 25 Kan App. 2d 245, 247, 963 P.2d 436, *rev. denied*, 265 Kan. 888 (1998).

We agree that Riggs' conduct was not subject to summary sanction as a direct contempt. Direct contempt is defined as contempt committed in the presence of a judge during a sitting of the court or in chambers. See K.S.A. 20-1202. It may be punished summarily "without written accusation against the person arraigned." K.S.A. 20-1203.

Here, the district judge stated on the record at the time of the conduct that he did not observe it. Riggs caused no significant

disruption in the trial; voir dire was able to proceed to completion as soon as the judge told her to take a different seat. When the judge spoke to Riggs at the conclusion of voir dire, he at first indicated that he had already found Riggs in contempt. He then told her to bring evidence supporting her explanation to the hearing approximately two weeks later. At the hearing, Riggs and her counsel explained to the judge that Riggs meant no disrespect. Further, the judge's remarks at the sentencing hearing indicated that he relied in part on his after-the-fact conversations with other jurors to determine that Riggs' behavior was contemptuous.

Riggs' argument regarding the deficiency of the journal entry also has merit. K.S.A. 20-1203 states:

"[I]f the court or judge in chambers shall adjudge [the accused] guilty [of direct contempt] a judgment shall be entered of record, in which shall be specified the conduct constituting such contempt, *with a statement of whatever defense or extenuation the accused offered thereto,* and the sentence of the court thereon." (Emphasis added.)

Riggs points out that the journal entry in her case does not state the defenses she relied upon, and the State concedes this fact. Nevertheless, the State argues that the purpose of the requirement of K.S.A. 20-1203 for a more detailed journal entry is to ensure a proper record for appellate review and that the hearing transcript's recording of Riggs' statement in her defense eliminates the need for such a journal entry in this case. At oral argument, the State offered support for this policy analysis by emphasizing the "in chambers" passage of K.S.A. 20-1203, asserting that, because this finding of contempt and the sentencing hearing were not "in chambers," the requirement of a more detailed journal entry did not apply.

Although we admire the State attorney's creativity, the State's argument ultimately fails to account adequately for cases from the Kansas Supreme Court and our court, which have addressed contempt convictions that do not comply with K.S.A. 20-1203.

In *State v. Jenkins,* 263 Kan. 351, 950 P.2d 1338 (1997), for example, an attorney was sanctioned for failing to appear at a preliminary hearing, failing to give notice of his absence to the court and other counsel, and being tardy to the rescheduled hearing. On

appeal, the Kansas Supreme Court found his actions constituted direct contempt, and it discussed the necessary statutory procedure:

"K.S.A. 20-1203 provides for summary punishment, but requires that a written judgment be entered, specifying the contemptuous conduct, defense or extenuating circumstances, and the sentence imposed. Failure to comply with 20-1203 is jurisdictional. See *In re Gambrell,* 160 Kan. 620, 623, 164 P.2d 122 (1945), *reh. denied* 161 Kan. 4, 165 P.2d 760 (1946). . . .

"Direct contempt orders have been held void for either failure to specify the conduct constituting the contempt or to state any defense or extenuation offered by the accused." 263 Kan. at 357.

The *Jenkins* court cited *State v. Flanagan,* 19 Kan. App. 2d 528, 873 P.2d 195 (1994). In *Flanagan,* the trial court held defendant in direct contempt after defendant continued to insist on appointed counsel despite having been told that he did not qualify. 19 Kan. App. 2d at 533. On appeal, we stated:

"K.S.A. 20-1203 was not complied with. The entire transcript of the conversation which led to the contempt citation is set forth above. The trial judge, at the time he declared defendant in contempt, did not specify the conduct constituting such contempt. There is no statement of 'whatever defense or extenuation the accused offered thereto.' The journal entry filed to codify the conviction is perfunctory and it does not specify the grounds or set forth any defense offered. . . .

"Our Supreme Court has held that a conviction for contempt which does not comply with K.S.A. 20-1203 is not merely reversible, it is void. *In re Gambrell,* 160 Kan. 620, 164 P.2d 122 (1945); *Wallace v. Weber,* 134 Kan. 201, Syl. ¶ 1, 5 P.2d 855 (1931). In *Gambrell,* the court said:

'The order of the court on the contempt proceedings contains no statement of the conduct constituting the contempt, neither does it contain a statement of whatever defense or extenuation the accused offered thereto. These matters are jurisdictional and the absence of them renders the order void. (See *Wallace v. Weber,* 134 Kan. 201, 5 P.2d 855, and cases cited therein.)' 160 Kan. at 623." 19 Kan. App. 2d at 532-33.

Under *Jenkins* and *Flanagan,* it is clear that the district court's finding of contempt is void. The fact that we have access to a transcript of Riggs' sentencing hearing does not excuse the district court's obligations under K.S.A. 20-1203.

Our decision on the merits of the contempt finding makes Riggs' additional arguments contesting the enhancement of her punishment moot.

Reversed and remanded with directions to vacate the sentence imposed on the contempt citation.