NOT DESIGNATED FOR PUBLICATION

No. 115,291

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CITY OF WILLIAMSBURG,
*Appellee*,

v.

ERIC S. CLARK,
*Appellant*.


MEMORANDUM OPINION

Appeal from Franklin District Court; DOUGLAS P. WITTEMAN, judge. Opinion filed September 16, 2016. Affirmed.

*Eric S. Clark*, pro se appellant.

*James R. Campbell*, of Coffman & Campbell, LLC, of Burlington, for appellee.

Before MALONE, C.J., BRUNS and SCHROEDER, JJ.

*Per Curiam*: Eric S. Clark appeals the district court's judgment finding him in direct contempt of court arising from a proceeding in the municipal court of the City of Williamsburg (City). On appeal, Clark argues the district court (1) erred when it found the municipal court had jurisdiction to hold the proceeding which resulted in his direct contempt charge, (2) erred when it found the municipal court's order of direct contempt met the statutory requirements, (3) violated his right to confront the witnesses against him by quashing a subpoena for the municipal judge, (4) failed to follow the proper appeal procedure by conducting a trial de novo, and (5) erred when it denied a motion to disqualify the prosecutor. We affirm the district court's judgment.

1

FACTS

When Municipal Court Judge Connie Sams attempted to hold court on July 10, 2015, Clark disrupted the proceedings and would not permit the judge to open court. The municipal court had two status hearings docketed for that day. In both cases, the defendants had earlier been found guilty of ordinance violations and were fined $25 per day of noncompliance. Clark was not a party to either of the cases on the court's docket.

Clark informed Judge Sams that he had a video recorder running. When the judge informed Clark that recording devices were prohibited in the courtroom by local rule, he refused to remove it. Instead, he began reading aloud from some documents, apparently some United States Supreme Court and Kansas Supreme Court decisions regarding municipal courts' authority to hold indirect contempt proceedings. Judge Sams gaveled court into session and told Clark to sit quietly, but he refused to do so. When the judge asked Clark to identify himself, he responded by saying, "I'm a free man." At one point, Clark asked, "May I ask under what authority you are holding court?" At another point, he indicated, "If a court is exceeding its authority, it is not a valid court." It is not clear from the record whether any of Clark's complaints or concerns were directly related to either of the two cases that were on the court's docket that day.

Judge Sams again asked Clark to sit in silence and when he refused to do so, she found him in direct contempt of court and ordered him taken into custody to serve 2 hours as punishment. After the court session, Judge Sams prepared and filed a written order of direct contempt of court in order to make a record of the proceedings.

Clark appealed the order of direct contempt to the district court. He filed a motion to dismiss the contempt proceedings, which the district court denied and set the matter for a trial de novo. Prior to the trial, the district court quashed Clark's subpoena for Judge Sams and denied Clark's motion to disqualify the prosecutor.

2

The district court held a trial de novo on December 11, 2015. The City's only witness was Pat Walsh, the city prosecutor who was in the courtroom on the day Clark was found in contempt. Walsh described the events that led to the contempt finding. Clark testified on his own behalf. He explained how Judge Sams had ordered him to turn off his recording device in the courtroom, which he refused to do. He also introduced into evidence what appears to have been a partial transcript of the proceedings that he recorded that day. After hearing the evidence, the district court found Clark guilty of direct contempt of court, ordered him to serve 2 hours in the Franklin County Detention Center, and gave him credit for time served. Clark timely appealed.

ANALYSIS

We begin by noting Clark's appeal is not moot despite having already served his sentence. See *State v. Flanagan*, 19 Kan. App. 2d 528, 529, 873 P.2d 195 (1994) ("we hold that a criminal contempt conviction does not become moot because a defendant may have served his or her time on that conviction").

There are two types of contempt—direct and indirect. K.S.A. 20-1201. Direct contempt is contempt "committed during the sitting of the court or of a judge at chambers, in its or his presence . . . . All others are indirect contempts." K.S.A. 20-1202. Clark's contempt occurred while the municipal court was sitting; his contempt is properly classified as direct contempt.

We will focus on Clark's claim that the district court erred when it found the municipal court's order of direct contempt met statutory requirements. Direct contempt is governed by K.S.A. 20-1203, which states:

> "That a direct contempt may be punished summarily, without written accusation against the person arraigned, but if the court or judge in chambers shall adjudge him

guilty thereof a judgment shall be entered of record, in which shall be specified the conduct constituting such contempt, *with a statement of whatever defense or extenuation the accused offered thereto*, and the sentence of the court thereon." (Emphasis added.)

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). K.S.A. 20-1203 is jurisdictional. *Harsch v. Miller*, 288 Kan. 280, 295, 200 P.3d 467 (2009). Whether jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013). Direct contempt orders that do not specify the conduct constituting the contempt or state the defense offered by the accused are void. *Harsch*, 288 Kan. at 295.

Clark argues the direct contempt charge is void because the municipal court's order does not indicate any defense or extenuation he offered for the contempt finding, as required by K.S.A. 20-1203. The State contends Clark did not offer a statement of defense before either the municipal court or district court. Kansas has prior cases that address this issue, and all of them are distinguishable from the present facts.

In *Harsch*, the plaintiffs filed a motion to stay an eminent domain proceeding in district court while they attempted to appeal an issue to the Kansas appellate courts. The district court indicated it intended to move forward with trial. In response, plaintiffs' counsel indicated he believed the district court did not have jurisdiction while the appeal was pending. Counsel informed the district court that any trial would be a nullity since he believed the district court did not have jurisdiction, and neither he nor his clients would appear for trial. When neither the plaintiffs nor their counsel appeared for the jury trial, the district court dismissed the case and found plaintiffs' counsel in direct contempt of court. The district court prepared a written order of direct contempt pursuant to K.S.A. 20-1203, but the order included nothing about counsel's defense to the contempt finding.

4

On appeal, the Kansas Supreme Court noted that the district court's written contempt order contained no reference as to why counsel failed to appear in court despite counsel repeatedly advising the district court why he would not appear for the jury trial. 288 Kan. at 295. The court determined that the contempt order failed to include "a statement of whatever defense or extenuation [counsel] offered." 288 Kan. at 295. Accordingly, the court held that the order of contempt was void because it failed to comply with K.S.A. 20-1203. 288 Kan. at 295.

In *State v. Williams*, 28 Kan. App. 2d 97, 11 P.3d 1187 (2000), a district judge found a prospective juror in contempt because she failed to stand to take the oath to serve as a juror. The juror explained that she remained seated because she was in pain and also she could not raise her hand because she had carpal tunnel syndrome. The judge found the prospective juror to be in direct contempt of court. At a later hearing in which the juror had appointed counsel, counsel argued that his client was not feeling well the day of the voir dire and pointed out that she had stated on her jury card that she had carpal tunnel syndrome and had not taken her pain medication. Nevertheless, the judge sentenced the juror to 30 days in jail, fined her $200, and placed her on probation. The journal entry stated that the juror was in contempt for failure to stand to take the oath, but it did not state the defenses or extenuating circumstances raised by the juror and her counsel at the hearing. On appeal, this court reversed the district court's contempt finding for multiple reasons, including the fact that the written journal entry failed to include a statement of the accused's defenses as required by K.S.A. 20-1203. 28 Kan. App. 2d at 101-02.

In *State v. Flanagan*, 19 Kan. App. 2d 528, 873 P.2d 195 (1994), a district judge found a criminal defendant in direct contempt of court because the defendant argued with the judge about not receiving appointed counsel. The judge determined that the defendant did not financially qualify for a court-appointed lawyer. The defendant repeatedly told the judge that he wanted a lawyer but could not afford one. After a lengthy colloquy, the

5

judge found the defendant in direct contempt of court and ordered that he be taken into custody. On appeal, this court reversed the contempt order in part because the journal entry did not set forth any defense offered by the accused in violation of K.S.A. 20-1203. 19 Kan. App. 2d at 532-33.

Finally, in *City of Dodge City v. Krisle*, No. 91,769, 2005 WL 823900 (Kan. App. 2005) (unpublished opinion), a district judge found counsel in contempt because, while questioning a witness in a DUI jury trial, counsel repeatedly attempted to bring out information about whether her client had lost his license as a result of the arrest. The prosecutor objected to the line of questioning based on relevance and the judge sustained the objection. Counsel attempted to pursue the line of questioning and argued to the court that the evidence was relevant. Counsel pointed out that the DC-70 form had been admitted into evidence and that whether her client lost his license went directly to that exhibit. The judge found that counsel was in direct contempt of court and fined her $250. The contempt finding was journalized in a written order that outlined counsel's conduct that constituted contempt of court but failed to set forth the defenses or extenuating circumstances given by counsel. On appeal, this court reversed the contempt order because, as conceded by the City, the order failed to comply with the procedure for direct contempt under K.S.A. 20-1203. 2005 WL 823900, at *3.

In each of these cases, the person accused of contempt expressed specific defenses and extenuating circumstances to justify his or her conduct. In *Harsch*, counsel repeatedly explained to the judge why he and his clients would not appear for the jury trial, 288 Kan. at 284; in *Williams*, the prospective juror repeatedly explained to the judge that she could not stand to take the oath because she was in pain and had carpal tunnel syndrome, 28 Kan. App. 2d at 98; in *Flanagan*, the defendant repeatedly told the judge that he needed a lawyer but could not afford one, 19 Kan. App. 2d at 530-32; in *Krisle*, counsel repeatedly pressed her argument that the information she attempted to bring out at trial was relevant, 2005 WL 823900, at *1. In each of those cases, the judge failed to

comply with K.S.A. 20-1203 because the journal entry of contempt did not include any statement of whatever defense or extenuation the accused offered for his or her conduct.

Here, Clark never asserted a defense for his disruptive courtroom behavior, or at least nothing that made much sense. Clark prevented Judge Sams from opening court by reading aloud from some United States Supreme Court and Kansas Supreme Court decisions. At one point, Clark asked, "May I ask under what authority you are holding court?" At another point, he indicated, "If a court is exceeding its authority, it is not a valid court." It is not clear from the record whether any of Clark's complaints or concerns were directly related to either of the two cases that were on the court's docket that day.

Judge Sams was patient with Clark but when he refused to sit in silence, she found him in direct contempt of court and ordered him taken into custody for 2 hours. Judge Sams dutifully attempted to comply with K.S.A. 20-1203 by filing a written order of direct contempt of court which states in its entirety as follows:

> "On the 10th day of July, 2015 upon arrival at the City Hall in Williamsburg Kansas where Municipal Court was to be held at 10:00 a.m. I entered the building where I heard a man's loud voice and sounded as he was reading something from the direction of the room where court is held. I entered the court room and requested that he stop and be seated. I ask [*sic*] him his name and he advised that he was a free man and he also told me that he was recording everything. I advised him that recording devices were not allowed in the court room so he would need to remove it. He started reading again and continued as I was trying to talk to him.
>
> "I left the room and requested that the clerk call Dispatch for a deputy be sent so I could try and establish order and have court. I left the building for several minutes.
>
> "I went back into the courtroom and ask [*sic*] the man if he would please sit, stop talking, and turn off his recording device so I could hold court. He continued explaining his rights and making reference to his readings.
>
> "When the deputy arrived I ask [*sic*] him more than once to please leave so I could hold court.

7

"The deputy tried to reason with him without success.

"I informed the man that he was being held in direct contempt of court.

"The deputy took him into custody and transported to the Franklin Co. Detention Center.

"I advised that I would drop off the paper work a little later.

"Mr. Clark was to be held in custody for 2 hours and released without further responsibility to the court.

"I later learned his name to be Eric Clark."

Judge Sams' written order attempted to explain Clark's conduct to the extent that any explanation could be provided. The order explained that Clark believed he had a right to record the municipal court proceedings. The order further explained that when Clark was asked to identify himself, he advised that he was "a free man." The order further explained that Clark attempted to read out loud from documents. The order further explained that when Sams asked Clark to please sit quietly, he "continued explaining his rights and making reference to his readings." In other words, the order attempted to give Clark's side of the story as to the events that led to the finding of contempt

Judge Sams' written order of direct contempt of court did not indicate that Clark questioned the municipal court's authority to hold court. However, we do not construe such a statement as a "defense" for Clark's contemptuous conduct. Clark never asserted any rational defense for his conduct during the proceedings in municipal court. He filed a motion to dismiss in district court, after Judge Sams already had filed her written contempt order, challenging the municipal court's "lack of jurisdiction to hold proceedings." However, his brief in support of the motion argued that a municipal court judge has no authority to punish for *indirect contempt*. The brief failed to give a rational explanation for his conduct in the courtroom on July 10, 2015. Clark did not raise the municipal court's lack of contempt powers during his testimony at the trial de novo.

8

The municipal court's written order of direct contempt of court did not include a specific statement of Clark's defense because Clark offered no discernable defense for his conduct in municipal court or in his appeal to the district court. Under the unusual facts and circumstances of this case, we conclude that the municipal court's written order of direct contempt of court complied with K.S.A. 20-1203.

We will address Clark's remaining issues on appeal in a summary manner. Clark argues that the district court erred when it found the municipal court had jurisdiction to hold the proceeding which resulted in his contempt charge. Clark's pro se brief with this court is difficult to follow, but the thrust of his argument appears to be that the municipal court lacked jurisdiction to hear the two cases that were scheduled on the court's docket on July 10, 2015. Whether jurisdiction exists is a question of law over which an appellate court's scope of review is unlimited. *Frazier*, 296 Kan. at 743.

K.S.A. 2015 Supp. 12-4104 provides in part that the municipal court has jurisdiction to hear cases involving violations of city ordinances. As the district court found, both cases set for review in municipal court on July 10, 2015, neither of which involved Clark, had previously been adjudicated and the journal entries reflected that each case involved a violation of city ordinances. Thus, the district court did not err when it found the municipal court had jurisdiction to hear the cases scheduled on July 10, 2015.

Clark also argues that the district court violated his right to confront the witnesses against him by quashing a subpoena for the municipal judge. A district court's decision on a motion to quash a subpoena is reviewed on appeal for abuse of discretion. *State v. Gonzalez*, 290 Kan. 747, 755, 234 P.3d 1 (2010). Here, there was no information for Judge Sams to provide at the trial de novo that could not be provided through other witnesses or presented through documentary evidence. We conclude the district court did not abuse its discretion by quashing the subpoena for the municipal judge.

9

Clark also argues that the district court failed to follow the proper appeal procedure by conducting a trial de novo. K.S.A. 22-3610 governs the procedure for appeals from municipal courts. As we previously stated, interpretation of a statute is a question of law over which appellate courts have unlimited review. *Westar Energy*, 301 Kan. at 918. Specifically, K.S.A. 22-3610(a) provides that when a case is appealed from municipal court to the district court, the "case shall be tried *de novo* in the district court." Thus, the district court properly followed K.S.A. 22-3610(a) in conducting a trial de novo of Clark's contempt proceeding.

Finally, Clark argues that the district court erred when it denied his motion to disqualify the prosecutor. Clark acknowledges that this issue is reviewed for an abuse of discretion. See *State v. Dimaplas*, 267 Kan. 65, 67-68, 978 P.2d 891 (1999). The record reflects that the City of Williamsburg hired James Campbell to prosecute the contempt proceeding in district court. Campbell is the municipal judge for the City of Ottawa and apparently Judge Sams is also employed as the city clerk for the City of Ottawa. Based on this connection, Clark filed a motion to disqualify Campbell from prosecuting the contempt proceeding in district court.

The district court found that no prima facie case was made to disqualify the prosecutor. We agree. "The key in deciding whether a prosecutor should be disqualified is whether the prosecutor has a significant personal interest in the litigation which would impair the prosecutor's obligation to act impartially toward both the State and the accused." *State v. Cope*, 30 Kan. App. 2d 893, 897, 50 P.3d 513, *rev. denied* 274 Kan. 1115 (2002). Clark received a trial de novo in the contempt proceedings in Franklin County district court. Judge Sams' role as city clerk and Campbell's role as municipal judge for the City of Ottawa were irrelevant to the proceedings and did not disqualify Campbell to serve as prosecutor. We conclude the district court did not err when it denied Clark's motion to disqualify the prosecutor.

10

Affirmed.

* * *


SCHROEDER, J., dissenting:  I agree with the majority that Clark's conduct was contemptuous before the City of Williamsburg Municipal Court, but I respectfully dissent from the majority's opinion the municipal court complied with K.S.A. 20-1203 in preparation of the journal entry of contempt.

There are two types of contempt—direct and indirect.  K.S.A. 20-1201. Direct contempt is contempt "committed during the sitting of the court or of a judge at chambers, in its or his presence . . . . All others are indirect contempts." K.S.A. 20-1202. Clark's contempt occurred while the municipal court was sitting; his contempt is properly classified as direct contempt.

Direct contempt is governed by K.S.A. 20-1203, which states:

"That a direct contempt may be punished summarily, without written accusation against the person arraigned, but if the court or judge in chambers shall adjudge him guilty thereof a judgment shall be entered of record, in which shall be specified the conduct constituting such contempt, *with a statement of whatever defense or extenuation the accused offered thereto*, and the sentence of the court thereon." (Emphasis added.)

K.S.A. 20-1203 is jurisdictional. *Harsch v. Miller*, 288 Kan. 280, 295, 200 P.3d 467 (2009). Whether jurisdiction exists is a question of law over which this court's scope of review is unlimited. *Frazier v. Goudschaal*, 296 Kan. 730, 743, 295 P.3d 542 (2013). Direct contempt orders that do not specify the conduct constituting the contempt or state the defense offered by the accused are void. *Harsch*, 288 Kan. at 295.

11

Clark argues his direct contempt charge is void because the municipal court's order does not indicate any defense or extenuation he offered. The State contends Clark did not offer a statement of defense before either the municipal court or district court.

The State's argument lacks factual support. First, the recording, which was admitted into evidence before the district court, clearly indicates Clark believed the municipal court lacked the authority to hold court. At one point, Clark asked, "May I ask under what authority you are holding court?" At another point, he indicated, "If a court is exceeding its authority, it is not a valid court." The document Clark was reading aloud also indicated municipal courts do not have the power to punish for indirect contempt, which includes fines for noncompliance.

Clark did not raise the municipal court's lack of contempt powers during his testimony at the trial de novo. However, he filed a motion to dismiss the contempt proceedings and a nine-page brief in support of his motion to dismiss in the district court arguing the municipal court lacked jurisdiction to charge him with direct contempt.

I acknowledge Clark's statements of defense occurred before he was found in contempt of court. However, I do not believe the statement of defense or extenuation must occur after a defendant is found in contempt. *Harsch* is illustrative.

In each of the cases cited by the majority, the lower court failed to comply with K.S.A. 20-1203, and thus, the order of contempt was void. See *Harsh*, 288 Kan. 280; *State v. Williams*, 28 Kan. App. 2d 97, 11 P.3d 1187 (2000); *State v. Flanagan*, 19 Kan. App. 2d 528, 873 P.3d 195 (1994); *City of Dodge City v. Krisle*, No. 91,769, 2005 WL 823900 (Kan. App. 2005) (unpublished opinion). In each case, the orders failed to contain the defenses or extenuating circumstances for the contemptuous conduct. The statute clearly places this duty on the lower court to correctly prepare the journal entry. This responsibility is even more significant when we are dealing with a finding of direct

12

contempt and where no contemporaneous record was made of the event. Thus, the journal entry of contempt, in essence, becomes the record. Without setting out the defenses or extenuating circumstances, offered or not offered, the journal entry is incomplete.

My review of the order of contempt prepared by the municipal court reflects *what* happened on that day in court but fails to set out *why* Clark did what he did. Again, a duty placed on the municipal court to include in the journal entry of contempt.

Because the journal entry of contempt fails to reflect Clark's defense or extenuating circumstances, offered or not offered, I would find the journal entry of contempt by the City of Williamsburg Municipal Court void, and would vacate the order of contempt.