No. 100,149

DOYLE HARSCH, *et al., Appellants,* v. DEBRA L. MILLER, SECRETARY OF TRANSPORTATION OF THE STATE OF KANSAS, *Appellee.*

(200 P.3d 467)

Opinion filed February 13, 2009.

*Mark B. Rockwell,* of Rockwell Law Firm, Chartered, of Lawrence, argued the cause and was on the briefs for appellants.

*Dustin J. Curry*, of office of chief counsel, Kansas Department of Transportation, argued the cause, and *Vicky S. Johnson*, chief counsel, was with him on the brief for appellee.

The opinion of the court was delivered by

NUSS, J.: This eminent domain controversy arises out of Doyle and Lea Harsches' efforts to appeal a district court's denial of their motion to stay proceedings. After the denial, the Harsches and their counsel refused to participate in a scheduled jury trial, claiming that their filing of a docketing statement with the clerk of the appellate courts deprived the district court of jurisdiction. That court disagreed. When the Harsches and counsel failed to appear for trial, the district court dismissed the action for lack of prosecution, held counsel in contempt, and levied costs and fees against him. The Harsches appeal pursuant to K.S.A. 26-504 (direct appeal to Supreme Court of any final order under the Eminent Domain Procedure Act [EDPA], K.S.A. 26-501 *et seq.*).

The issues on appeal, and our accompanying holdings, are as follows:

1. Did the district court lose jurisdiction to proceed with the trial once the Harsches filed their docketing statement with the clerk of the appellate courts? No.

2. Did the district court abuse its discretion in denying the Harsches' motion to stay and ordering the jury trial to proceed? No.

3. Did the district court commit reversible error in its contempt holdings? Yes.

Accordingly, we affirm the district court's dismissal of the action but reverse its contempt holdings.

## FACTS

The essential facts are not in dispute. Debra Miller, as Secretary of the Kansas Department of Transportation (KDOT), instituted eminent domain proceedings against property owned by the Harsches pursuant to K.S.A. 2007 Supp. 26-501. The Harsches then filed an action pursuant to K.S.A. 2007 Supp. 26-508 in Coffey County District Court, 07-CV-36, appealing the amount of the damages award of the court-appointed appraisers. In August 2007,

the district court set February 6-7, 2008, for the jury trial on the damages issue.

In December 2007, the Harsches filed a separate action in Coffey County District Court, 07-CV-67, contending that K.S.A. 26-513(c) of the EDPA was unconstitutional on its face and as applied. They simultaneously filed a motion in 07-CV-36 to temporarily stay that district court damages appeal pending the outcome of their constitutional challenge.

That same month the Harsches also filed an action in the United States District Court for the District of Kansas, again challenging the constitutionality of 26-513(c). The next day, after hearing oral arguments, the state district court temporarily denied the motion to stay 07-CV-36 but acknowledged the federal court action and ruled that the motion would be reconsidered on or about January 11 after further briefing. Soon thereafter the Harsches dismissed their state constitutional challenge: 07-CV-67.

On December 27, 2007, the Harsches filed a pleading with the state district court formally waiving their request for additional briefing and "accepted the finality of the court's order" denying the stay. They also filed with that court their notice of appeal of its denial of their motion to stay pending resolution of the federal constitutional challenge which was set for trial June 16, 2009.

Eleven days later, on January 7, 2008, the Harsches filed their docketing statement with the clerk of the appellate court in *Harsch v. Miller*, No. 99,807. In their statement they acknowledged that the order appealed from was not a "final order" and that the district court had not directed entry of judgment in accordance with K.S.A. 60-254(b). Rather, they asserted the "collateral order doctrine" as the authority for their appeal. The district court received notice of the docketing.

Three days later the Court of Appeals issued a show cause order. According to the order, no final appealable order was apparent; nor was it clear that the requirements of the collateral order doctrine had been met. It directed that by January 22 the parties should provide argument on why the appeal should not be dismissed as interlocutory.

In the Harsches' response, they continued to argue that the collateral order doctrine did apply. They now also argued, however, that they were appealing a "final decision immediately appealable under K.S.A. 60-2102(a)(4)," citing *Moses H. Cone Hospital v. Mercury Constr. Corp.,* 460 U.S. 1, 74 L. Ed. 2d 765, 103 S. Ct. 927 (1983). KDOT's response to the show cause order primarily cited *Gansert v. Colorado Student Loan Program,* 122 Fed. Appx. 924, 925 (10th Cir. 2004) (unpublished opinion), as support for the argument that the "denial of a motion to stay proceedings which does no more than postpone the resolution of an action is not an appealable collateral order" (citing *GulfStream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 99 L. Ed. 2d 296, 108 S. Ct. 1133 [1988]).

Nine days after the responses, on January 31, the district court conducted a pretrial conference. The Harsches' counsel, Mark B. Rockwell, appeared by telephone. The court reminded everyone that the jury trial remained scheduled to begin February 6.

The next day, February 1, the Harsches filed with the district court a pleading titled "Suggestion of Absence of Jurisdiction." They argued that the district court lost jurisdiction on January 7 when their "appellate docketing statement was accepted for filing" by the appellate court clerk. Among other things, their pleading stated:

"Until the supreme court either dismisses the appeal or otherwise remands the case, the district court is powerless to proceed as has been the case since January 7th. Consequently, district court proceedings, orders, and rulings in effect or issued subsequent to January 7, 2008, are null and void."

On February 4, the district court conducted a telephone hearing on the Harsches' recent pleading. Their counsel orally reiterated the pleading's argument: that while the supreme court might eventually dismiss their appeal, until that time that court, and not the district court, had jurisdiction.

The district court disagreed and criticized the Harsches' reasoning with an example:

"The Court does not believe that this is a correct interpretation of state statutes. If that were the correct interpretation, parties could file docketing statements and

notice cases up for appeal and continue litigation forever. A case could go on and on and never get to trial.

"[T]hey could motion up any type of hearing and depending upon what the Court decided in that particular hearing they could file a notice of appeal, docket it, and the court allows the appeal until such time as the court or Court of Appeals dismissed it, it could continue on to infinity."

The court interpreted the Harsches' appeal of an order denying stay as a type of interlocutory appeal. It noted that the procedures contained in K.S.A. 2007 Supp. 60-2102 for obtaining such an appeal had not been followed. Accordingly, the court ruled that it still had jurisdiction to proceed with the jury trial scheduled to begin 2 days later and ordered counsel to appear.

Harsches' counsel responded that because the district court no longer had jurisdiction, any trial would be a nullity. Consequently, neither he nor his clients would show up for, much less participate in, the jury trial. In response to the court's question, counsel acknowledged he understood that "the court goes to a huge expense to have a jury come here." The court then warned that should

"you fail to appear that day [of trial], there will be consequences for that failure to appear. Those will not only be against your client and their appeal of that appraisers' award, but there will be consequences against you personally as an attorney."

After the Harsches' counsel reiterated that the district court no longer had jurisdiction, the judge responded:

"Well, the Court has made determinations that in fact it does and the Court will expect you to act accordingly. The Court intends on having a jury trial starting on Wednesday here in Coffey County. If you fail to appear I guess you do so at your own risk."

The Harsches' counsel again stated that they would not be present: "We aren't participating in district court proceedings at this time, Your Honor."

True to counsel's representations, on February 6, he and his clients failed to appear for the jury trial. The district court noted that the jury was present and ready to proceed. It also stated that it had called counsel's office the day before to see whether they would attend and whether the jury should be dismissed, but it had received no return call. The court then dismissed 07-CV-36 for

lack of prosecution, confirmed the original appraisers' award, and held Rockwell in contempt:

"In the Court's opinion Mr. Rockwell's failure to appear today is in direct contempt of court in violation of K.S.A. 20-1203. The Court directed Rockwell to appear today. He chose not to do so. Therefore the Court finds him in direct contempt of court and assesses those costs accordingly."

The court assessed $3,769 in costs and fees against Rockwell personally for the county's costs for convening a jury and for juror questionnaires; KDOT's attorney fees for travel and trial appearance; and the costs for KDOT's factual and expert witnesses' time and travel for trial.

One week later, on February 13, this court—having taken the case from the Court of Appeals on January 11 under K.S.A. 26-504—dismissed "for lack of jurisdiction" the Harsches' appeal of the district court order denying the stay. Later that month, the Harsches filed their notice of appeal of the district court's dismissal of their K.S.A. 2007 Supp. 26-508 appeal for lack of prosecution and holding their counsel in contempt.

## ANALYSIS

Issue 1: *The district court did not lose jurisdiction once the Harsches filed their docketing statement with the clerk of the appellate courts.*

The Harsches argue that the district court lost jurisdiction on January 7, 2008, when they filed their docketing statement (No. 99,807) for appealing the denial of their motion to stay, citing *Honeycutt v. City of Wichita*, 251 Kan. 451, 461, 836 P.2d 1128 (1992) ("[I]n Kansas . . . the trial court keeps jurisdiction until the appeal is docketed in the appellate court."). While they do not dispute the propriety of our dismissing their original appeal for lack of jurisdiction on February 13, 2008, they do assert that the district court should not have proceeded "as if this court's eventual dismissal was inevitably foreseeable."

The Harsches further contend that dual jurisdiction in trial and appellate courts with concurrent proceedings also violates the policies of judicial economy, orderly court procedures, and litigation cost minimization. Consequently, they argue that the district

court's February 6 dismissal for lack of prosecution of their appeal to that court of the eminent domain compensation award, as well as the holding of their counsel in direct contempt, should be declared void for lack of jurisdiction.

KDOT generally responds that the filing of the docketing statement did not deprive the district court of jurisdiction for all purposes, citing *Carson v. Eberth,* 3 Kan. App. 2d 183, 592 P.2d 113 (1979). It points out that the existence of jurisdiction is a question of law over which our scope of review is unlimited. *Schmidtlien Electric v. Greathouse,* 278 Kan. 810, 830, 104 P.3d 378 (2005). We agree with KDOT.

We begin our analysis by recognizing that Kansas appellate courts have indeed sometimes made general statements that appear supportive of the Harsches' position. For example, in addition to *Honeycutt,* 251 Kan. at 461, the Court of Appeals has stated: "In Kansas, the district court retains jurisdiction until an appeal is docketed with the appellate court." *Sanders v. City of Kansas City,* 18 Kan. App. 2d 688, 692, 858 P.2d 833, *rev. denied* 253 Kan. 860 (1993), *cert. denied,* 511 U.S. 1052 (1994).

Kansas appellate courts, however, have also acknowledged instances where this general principle does not apply:

" '*Without exception it is held that an appeal under the civil code does not automatically stay further proceedings in the court below.* The latest expression to this effect is *Barstow v. Elmore,* 177 Kan. 30, [276 P.2d 360 (1954),] where it was held that the appeal did not deprive the trial court of jurisdiction to grant a new trial while the appeal was pending. Again, in *Owen v. Stark,* 175 Kan. 800, [267 P.2d 948 (1954),] defendants appealed from an order overruling their demurrer to the petition. Notwithstanding such appeal, the district court proceeded to try the case and rendered judgment on the pleadings in favor of plaintiffs. Defendants again appealed, the two appeals being considered together. The defendants argued that their first appeal operated to stay further proceedings in the trial court. The opinion states ([*Owen,* 175 Kan. at] 808), "This view is erroneous. No statute provides for that." This holding is in accord with earlier cases. [Citations omitted.] *The law is thus settled that an appeal in a civil case does not, of itself, prevent the lower court from proceeding with the case.* '" (Emphasis added.) *State v. Hess,* 180 Kan. 472, 476, 304 P.2d 474 (1956).

See also *Carr v. Diamond,* 192 Kan. 377, 379, 388 P.2d 591 (1964) ("An appeal to this court does not of itself operate as a stay of

further proceedings in the trial court."); *Fields v. Blue Stem Feed Yards,* 195 Kan. 167, 170, 403 P.2d 796 (1965) (same). Indeed, in *In re Estate of Robinson,* 232 Kan. 752, 754, 659 P.2d 172 (1983), this court held that while a trial court does not have jurisdiction to modify a judgment after it has been appealed and the appeal docketed at the appellate level, this rule did not prevent the trial court from allowing attorney fees and expenses while the case was on appeal.

More important than this particular case law, however, is our recognition that the right to appeal is entirely statutory and that the limits of our jurisdiction are imposed by the legislature. See Kan. Const. art. 3, § 3 (Supreme Court has "such appellate jurisdiction as may be provided by law"). We have acknowledged that because Kansas appellate courts may exercise jurisdiction only under circumstances allowed by statute, "the appellate courts do not have discretionary power to entertain appeals from all district court orders." *Flores Rentals v. Flores,* 283 Kan. 476, 481, 153 P.3d 523 (2007). And the legislature clearly has not authorized parties to unilaterally appeal from any or all orders of the district court in the middle of litigation with the hope, perhaps vain, that the appellate court will ultimately decide that the order is indeed properly appealable. See *Johnson v. Johnson,* 219 Kan. 190, 193, 547 P.2d 360 (1976) (the Supreme Court has the exclusive responsibility of determining whether its jurisdiction has been properly invoked).

As the district court suggested, such a practice would be comparable to an appellate yo-yo. A trial court order, however minor, would be appealed and all trial court proceedings would be stayed until the appeal's legitimacy eventually was ruled upon by the appellate court. Even if the appeal of the order were dismissed for lack of jurisdiction, another trial court order could be appealed and the trial court proceedings would again be stayed until ruled upon by the appellate court, and so on.

The Harsches discount these concerns, arguing that the docketing statement will force an appellant to reveal all jurisdictional weaknesses and that sanctions may be imposed for frivolous appeals. Nevertheless, we observe that even in the instant case, where

counsel argues he proceeded with the greatest of respect and good faith, approximately 7 weeks—of potential delay—transpired between the time of the notice of appeal and the dismissal of the appeal for lack of prosecution.

In short, this proposed practice is inconsistent with the clearly stated Kansas policy to avoid piecemeal appeals. "The policy of the new [Code of Civil Procedure] leaves no place for intermediate and piecemeal appeals which tend to extend and prolong litigation. Its purpose is to secure the just, speedy and inexpensive determination of every action." *Connell v. State Highway Commission,* 192 Kan. 371, 374, 388 P.2d 637 (1964); see also *Cooke v. Gillespie,* 285 Kan. 748, 754, 176 P.3d 144 (2008) (" 'In Kansas, "piecemeal appeals are frowned upon." ' "). Indeed, this court has held that even a trial court's sincere, but erroneous, attempt to certify a particular order as final for appellate purposes under K.S.A. 60-254(b) ran counter to this policy:

"Piecemeal appeals are undesirable and cannot be sanctioned by allowing a trial court to *circumvent the finality requirement* simply by granting certification under K.S.A. 60-254(b) to an interlocutory ruling, which otherwise would require permission from the Court of Appeals [pursuant to K.S.A. 60-2102(c)] before an appeal could be taken." (Emphasis added.) *Wilkinson v. Shoney's, Inc.,* 265 Kan. 141, 146-47, 958 P.2d 1157 (1998).

Additionally, this proposed practice not only endorses the appellate yo-yo, but it also allows the yo-yo to be primarily controlled by the appealing party—not by the district court or by the appellate court. While parties have certain rights, the trial court must maintain overall control of its proceedings. *Cf. In re A.A.,* 38 Kan. App. 2d 1100, 1105, 176 P.3d 237, *rev. denied* 286 Kan. 1177 (2008) (A district court has substantial discretion in controlling the proceedings before it.); see also *Landis v. North American Co.,* 299 U.S. 248, 254, 81 L. Ed. 153, 57 S. Ct. 163 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants.").

We further observe that as part of the legislature's desire to reduce the chances of piecemeal appeals, the legislature has limited appeals to certain circumstances only. See generally K.S.A.

2007 Supp. 60-2102. As we discussed in *Flores,* these legislative categories of appeal include: (1) final decisions under subsection (a)(4), which are of right; and (2) interlocutory appeals under subsection (c), which are discretionary with the appellate courts. 283 Kan. at 481.

We acknowledged in *Flores* that the United States Supreme Court has addressed a "very narrow exception" to the final decision requirement—the collateral order doctrine. 283 Kan. at 481-82, 490. See *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468-69, 57 L. Ed. 2d 351, 98 S. Ct. 2454 (1978). Illustrative of the policy of limiting categories of appeals is the *Flores* court's holding that "[t]here is no sound policy to liberalize the [collateral order] doctrine, *especially when the opportunity exists for an interlocutory appeal* if the Court of Appeals is persuaded, in the exercise of its discretion, to allow the appeal.[Citation omitted.]" (Emphasis added.) 283 Kan. at 490.

Here, the Harsches seemingly made no effort to ascertain that the order which they were attempting to appeal was actually a final order under K.S.A. 2007 Supp. 60-2102(a)(4) or K.S.A. 26-504 ("Appeals to the supreme court may be taken from any final order under the provisions of" the EDPA). They apparently failed both through their own research and through action requested of the district court, *e.g.,* arguably certification as a final order pursuant to K.S.A. 60-254(b). See, *e.g., Wilkinson,* 265 Kan. at 146-47.

Indeed, they admitted in their docketing statement that the order was not final. The admission was with good reason. See *Moses H. Cone Hospital,* 460 U.S. at 10-11 (district court decision to stay litigation "is not ordinarily a final decision" for appeal purposes); *Crystal Clear Communications v. Southwestern Bell,* 415 F.3d 1171, 1176 (10th Cir. 2005) ("If a stay merely delays litigation and does not effectively terminate proceedings, it is not considered a final decision."); *cf. Delta Traffic Service v. Occidental Chemical Corp.,* 846 F.2d 911 (3d Cir. 1988) (District court refusal to stay action and refer matter to the Interstate Commerce Commission (ICC) was not appealed from as a final order because apparently it was not. Rather, it was appealed as collateral order, or one essentially involving injunction denial. Because it was neither, appeal

dismissed for lack of jurisdiction and remanded.); *Oertel v. Phillips,* 197 Kan. 113, 115, 415 P.2d 223 (1966) ("An order overruling a motion to dismiss an action is not a final or appealable order.") (quoting *Cusintz v. Cusintz,* 195 Kan. 301, 302, 404 P.2d 164 [1965]).

Clearly, the Harsches also never made any attempt to take the safer approach to ascertain the legitimacy of their appeal by seeking interlocutory status as provided for in K.S.A. 2007 Supp. 60-2102(c). See *In re Condemnation of Land v. Stranger Valley Land Co.,* 280 Kan. 576, 123 P.3d 731 (2005) (interlocutory appeal conducted in eminent domain proceeding). That statute provides in relevant part:

"(c) When a district judge, in making in a civil action an order not otherwise appealable under this section, is of the opinion that such an order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the judge shall so state in writing in such order. The court of appeals may thereupon, in its discretion, permit an appeal to be taken from such order . . . Application for an appeal hereunder shall not stay proceedings in the district court unless . . . so order[ed]."

While the Harsches obviously relied upon the collateral order doctrine, such reliance is risky, particularly through an attempted appeal during the middle of the litigation. As mentioned, less than 1 year before their attempted appeal of the denial of their motion to stay we had stated that the doctrine was a "very narrow exception" to the final decision requirement and that there was no sound policy to liberalize it when an interlocutory appeal opportunity existed. *Flores,* 283 Kan. at 490; see *Feldspar Trucking v. Greater Atlanta Shippers,* 849 F.2d 1389 (11th Cir. 1988) (district court refusal to stay action and refer matter to ICC was not collateral order; appeal dismissed for lack of jurisdiction and remanded); *Delta Traffic Service, Inc.,* 846 F.2d 911; see also *Gansert,* 122 Fed. Appx. 924 at 925 ("denial of a motion to stay proceedings which does no more than postpone the resolution of an action is not an appealable collateral order").

We recognize that the Harsches did file a request with this court to stay the district court action. See Supreme Court Rule 5.01

(2008 Kan. Ct. R. Annot. 33). *Cf. State v. Johnston*, 78 Kan. 615, 618, 97 P. 790 (1908) (proper manner for parties and their counselors to test the validity of an order of court is not to defy it, but to move, in the court which issued it or in some court having supervisory jurisdiction, to have it set aside). But while they filed such a motion on January 25, 2008, they withdrew it 7 days later, believing it to be "only appropriate and necessary in the case of an interlocutory appeal," and not for their asserted bases of a final order and a collateral order. They cited "K.S.A. §§ 60-2102(c) and 60-2102a(c)."

We also observe that the Harsches failed to take ascertaining steps even after they had been notified by the Court of Appeals that their appellate position was doubtful. That court expressly advised the Harsches in its January 10, 2008, show cause order that apparently there was no final appealable order and that it was not clear that the requirements of the collateral order doctrine had been met. The Court of Appeals directed that the parties provide argument why the appeal should not be dismissed as interlocutory (when the statutory steps for perfecting such an appeal obviously had not been attempted).

We further observe that the Harsches had also been advised by the district court on several occasions in January and February 2008 that their appellate position was tenuous when the court refused to stay the jury trial. The court rejected not only their written motion to stay but also their position announced in the "Suggestion of Absence of Jurisdiction" after filing their docketing statement. Nevertheless, they chose to not participate in the trial.

Apparently, the Harsches attempted to use the appeal as the functional equivalent of a stay of the state court proceedings to help protect their June 16, 2009, trial in federal court. In other words, they gambled, and they lost.

In a letter of additional authority provided to this Court pursuant to Supreme Court Rule 6.09 (2008 Kan. Ct. R. Annot. 47), the Harsches argue that trying their case while their appeal was pending would have constituted acquiescence in the district court's refusal to stay and a waiver of their right of appellate review. They

cite *Tice v. Eberling,* 238 Kan. 704, 715 P.2d 397 (1986), in support. We disagree.

In *Tice,* the plaintiff's counsel did not object to the court's ruling but merely proceeded. We stated:

"The plaintiff's counsel did not object to the court's ruling. As a general rule, anything which savors of acquiescence in a judgment cuts off the right of appellate review. [Citations omitted.] The gist of acquiescence sufficient to cut off a right to appeal is *voluntary compliance* with the judgment. *McDaniel v. Jones,* 235 Kan. 93, 102, 679 P.2d 682 (1984).

" . . . Appellate review is not available where there has been acquiescence and a failure to object to actions at trial." (Emphasis added.) *Tice,* 238 Kan. at 713.

By contrast, several times the district court in the instant case ordered the Harsches, and their counsel, to proceed. Their objections and the bases for their objections to proceeding were clearly stated in the record and were thus preserved for appeal. Additionally, they were warned by the district court that failure to participate in the scheduled jury trial would be at their own risk and have consequences. Instead, they chose to disobey such orders. Compare *Haberer v. Newman,* 219 Kan. 562, 568, 549 P.2d 975 (1976) (court rejected defendants' claim that their actions were done involuntarily under threat of being held in contempt of court; acquiescence therefore found and right to appeal foreclosed).

Because the Harsches did not appear for trial, the district court dismissed their appeal of the appraisers' award under K.S.A. 2007 Supp. 26-508 for lack of prosecution. Because they argue only that the court had no jurisdiction to take any action and they take no other issue with the propriety of the dismissal, we need not decide whether the dismissal was an abuse of the district court's discretion. See *Frost v. Hardin,* 218 Kan. 260, 263, 543 P.2d 941 (1975).

Issue 2: *The district court did not abuse its discretion in denying the motion to stay and ordering the jury trial to proceed.*

The parties agree that we review the district court's denial of the Harsches' motion to stay for abuse of discretion. See *Henry, Administrator v. Stewart,* 203 Kan. 289, 293, 454 P.2d 7 (1969). As mentioned, "the power to stay proceedings is incidental to the

power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis,* 299 U.S. at 254. We have held that discretion is abused when no reasonable person would take the view adopted by the district court. *State ex rel. Stovall v. Meneley,* 271 Kan. 355, 368, 22 P.3d 124 (2001).

KDOT observes that "a stay in a civil case is an extraordinary remedy," quoting *Meneley,* 271 Kan. at 367. The party seeking the stay not only bears the burden of proof to establish that the stay is necessary (271 Kan. at 368), but also the party who asserts abuse of discretion bears the burden of showing it. *Vorhees v. Baltazar,* 283 Kan. 389, Syl. ¶ 2, 153 P.3d 1227 (2007).

Nevertheless, the Harsches argue that the district court abused its discretion in denying the motion to stay and in ordering the jury trial to proceed. We disagree.

We first observe that according to the record, the district court gave the parties opportunity to argue before issuing a temporary ruling to deny the stay in December 2007. It then allowed the parties to additionally brief the issue and argue on reconsideration before making its final ruling. The Harsches waived those opportunities and accepted the finality of the order denying the stay.

We next observe that the Harsches filed their constitutional challenge in a separate action in state court, 07-CV-67, and then dismissed it within days, essentially refiling it in federal court. They asked that the eminent domain proceeding, 07-CV-36, which was scheduled for state trial in February 2008, be stayed until the resolution of their federal court challenge. The federal action was set for trial in June 2009—16 months later. Presumably, if the Harsches had lost their federal trial, they would have desired to appeal to the Tenth Circuit Court of Appeals and would have asked that the state action remain stayed.

Similarly, if they had lost at that level, they would presumably have desired to file a petition for a writ of certiorari with the United States Supreme Court and would have asked that the state action remain stayed. If that petition were eventually denied, presumably they would then have been ready to proceed with their jury trial on damages in state court and with the Kansas appellate process,

if necessary. We note that under K.S.A. 26-504, appeals of final orders under the EDPA "shall take precedence over other cases," which suggest a legislative intent to expedite such appeals. As a result, we cannot say that no reasonable person would agree with the trial court in wanting to move the Harsches' case faster than the pace they requested.

The Harsches also expend considerable effort arguing that "res judicata and mootness" would bar their subsequent federal constitutional challenge if the state court condemnation damages action proceeded to judgment first. We disagree. Their rights to proceed on their constitutional claim in federal court would not have been cut off.

We observe that the Harsches could not bring their constitutional claim in the Coffey County District Court eminent domain proceedings or the appeal of those proceedings. The court has no jurisdiction to hear such claims there. *Miller v. Bartle*, 283 Kan. 108, 117-19, 150 P.3d 1282 (2007). Rather, " 'the constitutional issue should be raised in a separate judicial proceeding.' " 283 Kan. at 118 (quoting *In re Condemnation of Land for State Highway Purposes*, 235 Kan. 676, 683, 683 P.2d 1247 [1984]). The Harsches announced in their docketing statement that the *Miller* holding was the reason why they filed their constitutional challenge to K.S.A. 26-513(c) in a separate action in state court. Had they pursued their state court constitutional challenge instead of dismissing and filing in federal court, we would be hard pressed indeed to bar it because of res judicata and mootness in light of our directions to litigants contained in *Miller*. Accordingly, we believe the federal courts would make the same determination.

We find no abuse of discretion.

Issue 3: *The district court committed reversible error in its contempt holdings.*

The Harsches' counsel, Rockwell, raises a number of reasons why the contempt order against him should be reversed and, if not, the accompanying monetary sanctions should be reduced. The State simply responds that the district court had jurisdiction to find him in direct contempt for not appearing as the court directed.

We need only reach one of Rockwell's arguments, as it is clearly dispositive in his favor: The district court's contempt order is void due to a jurisdictional defect. The existence of jurisdiction is a question of law over which our scope of review is unlimited. *Schmidtlien Electric,* 278 Kan. at 830.

The district court's contempt ruling was memorialized in an entry of judgment which identified K.S.A. 20-1203 as the basis for the direct contempt. That statute provides:

"That a direct contempt may be punished summarily, without written accusation against the person arraigned, but if the court or judge in chambers shall adjudge him guilty thereof a judgment shall be entered of record, in which shall be specified the conduct constituting such contempt, *with a statement of whatever defense or extenuation the accused offered thereto,* and the sentence of the court thereon." (Emphasis added.)

As noted, Rockwell repeatedly advised the court of the reasons why neither he nor his clients would appear for the jury trial. However, the journal entry contains no reference as to *why* he failed to appear, *i.e.,* "a statement of whatever defense or extenuation [Rockwell] offered." K.S.A. 20-1203.

Kansas appellate courts have held that such a failure to follow the requirements of 20-1203 is fatal; indeed, the defect is jurisdictional and the order therefore void. See *State v. Jenkins,* 263 Kan. 351, 357, 950 P.2d 1338 (1997) (failure to comply with 20-1203 is jurisdictional); *In re Gambrell,* 160 Kan. 620, 623, 164 P.2d 122 (1945), *reh. denied* 161 Kan. 4, 165 P.2d 760 (1946); *Wallace v. Weber,* 134 Kan. 201, Syl. ¶ 1, 5 P.2d 855 (1931); *State v. Williams,* 28 Kan. App. 2d 97, Syl. ¶ 4, 11 P.3d 1187 (2000); *State v. Flanagan,* 19 Kan. App. 2d 528, Syl. ¶ 4, 873 P.2d 195 (1994). And while counsel's reasons presented to the district court are amply contained in the record on appeal, their presence there cannot cure the defect caused by their absence in the journal entry. *Williams,* 28 Kan. App. 2d at 101-02.

The decision of the district court dismissing for lack of prosecution the Harsches' appeal of the appraisers' award to that court is affirmed. The decision of the district court holding their counsel in contempt and assessing sanctions is reversed.

Affirmed in part and reversed in part.

MCFARLAND, C.J., not participating.

HILL, J., assigned.