NOT DESIGNATED FOR PUBLICATION

No. 121,818

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

MELISSA SHOCKMAN, f/k/a MELISSA STOCKMAN,
*Appellee*,

and

DEREK STOCKMAN,
*Appellant*.

MEMORANDUM OPINION

Appeal from Thomas District Court; KEVIN BERENS, judge. Opinion filed April 10, 2020.
Affirmed.

*Daniel C. Walter*, of Walter, Walter & Peterson, of Norton, for appellant.

*Rance E. Ames*, of Ames Law, P.A., of Phillipsburg, for appellee.

Before ATCHESON, P.J., WARNER, J., and WALKER, S.J.

PER CURIAM: Derek Stockman and Melissa Shockman divorced in 2015. The divorce decree granted Melissa residential custody of their son, A.S., gave Derek visitation rights, and set Derek's child-support obligation. Melissa has since moved to Oregon and, more recently, to Alaska. Derek filed a motion seeking residential custody of A.S., which the district court denied after a bench trial. The court then reduced Derek's child-support obligation in light of the evidence submitted at the custody trial but entered an order finding Derek owed $9,280 in unpaid child support. We affirm.

1

FACTUAL AND PROCEDURAL BACKGROUND

Melissa Shockman and Derek Stockman married in March 2012 in Hays. Several months later, Melissa gave birth to their son, A.S. They lived together for three years near Kirwin, where Derek farms. But three years into the marriage, the couple separated. A decree of divorce was entered in July 2015.

The divorce decree provided for joint legal custody of A.S. and awarded Melissa residential custody. The decree indicated the parties understood and anticipated that within the near future, Melissa planned to move to Oregon with A.S. After this move, the approved parenting plan indicated A.S. would spend his entire summer, spring break, and alternating Thanksgivings and Christmases with Derek in Kansas. Melissa and Derek would exchange A.S. in Denver, a five-hour drive from Kirwin. Derek could also visit A.S. between those specified visitation periods. Finally, Derek would pay $500 per month in child support.

Melissa eventually remarried and moved to Oregon with her new husband and A.S. Reports from A.S.'s kindergarten teacher indicate he adjusted well to the move. Derek, however, has encountered hurdles as he has attempted to maintain a long-distance relationship with A.S. For example, Derek video-chats with A.S. via FaceTime two or three times per week, but he claims he sometimes had difficulties setting up times with Melissa for these calls. And a few times, Derek's unanswered calls were not returned. Similarly, Derek indicates he had trouble planning A.S.'s visitation periods. In early 2018, Melissa told Derek that A.S. could not visit during spring break because she was due to have another child right around that time and could not fly A.S. to Denver. Melissa also believed A.S. needed to spend time with his new sibling. According to Melissa, she had anticipated this issue and let Derek visit A.S. during a portion of her Christmas time with him. While A.S. did ultimately visit during that break, Derek felt Melissa was dictating the terms of their visitation arrangement.

2

In March 2018, Derek filed a motion to modify A.S.'s custody. Derek proposed that the parents switch arrangements—that he take residential custody of A.S. and Melissa have Derek's current visitation rights. Melissa opposed this motion and sought unpaid child support since the parties' divorce.

About a year into the 2018 custody dispute, Melissa informed Derek she would be moving to Wasilla, Alaska, because of her husband's job. The flight from Anchorage to Denver is approximately five hours—three hours longer than the flight between Portland and Denver—and Alaskan winter weather interrupts flights. Regardless of who has residential custody, Derek would make the same number of trips from Kirwin to Denver to pick up and drop off A.S. for visitation periods. Derek has visited A.S. three times in Oregon, and the move to Alaska would make it more expensive for Derek to visit A.S.

The court held a trial on the custody issue in May 2019. During the hearing, the parties submitted exhibits documenting not only visitation but also their support obligations, including—among other matters—the parties' agreement that they would alternate years claiming A.S. as a dependent for tax purposes; their arrangement for providing A.S.'s health insurance; and the child-support payments made by Derek since 2015. After considering the evidence, the court denied Derek's motion, ruled that Melissa would maintain residential custody, and established a schedule for A.S.'s visitation.

At the close of the hearing, the court informed the parties that it had the information necessary to determine child support and any arrearage. Neither party objected. The next day, the court issued an order reducing Derek's monthly child-support obligation from $500 to $316 and requiring him to pay $9,280 in unpaid support. Derek now appeals the district court's rulings regarding custody and child support.

3

When the parents of a minor child divorce, a court must determine child custody, residency, and parenting time by looking to the best interests of the child. K.S.A. 2019 Supp. 23-3201. A court may later modify those determinations upon a showing of a material change in circumstances. K.S.A. 2019 Supp. 23-3218(a). A qualifying change "must be of a substantial and continuing nature [so as] to make the terms of the initial decree unreasonable." *In re Marriage of Whipp*, 265 Kan. 500, Syl. ¶ 3, 962 P.2d 1058 (1998). A parent's repeated and unreasonable interferences with the other's parenting time and a change in the child's residence may constitute a material change. K.S.A. 2019 Supp. 23-3221(b); K.S.A. 2019 Supp. 23-3222(c). When a material change stems from a changed residency, courts look to several factors, including the move's effect and increased costs imposed on the non-moving party, and the effect on the best interests of the child. K.S.A. 2019 Supp. 23-3222(c).

Courts must consider all relevant factors when determining a child's best interests. K.S.A. 2019 Supp. 23-3203(a). These factors include the "child's adjustment to the child's home, school and community" and "the ability of the parties to communicate, cooperate and manage parental duties." K.S.A. 2019 Supp. 23-3203(a)(7), (10). And if a parenting plan exists, courts generally presume the plan reflects the best interests of the child. K.S.A. 2019 Supp. 23-3202.

Because the district court is in the best position to determine the best interests of a child, appellate courts review a district court's custody determination for an abuse of discretion. *In re Marriage of Rayman*, 273 Kan. 996, Syl. ¶ 1, 47 P.3d 413 (2002). A court abuses its discretion when its decision is based on an error of fact, an error of law, or when no reasonable person would adopt the court's position. *State ex rel. Secretary of DCF v. Smith*, 306 Kan. 40, Syl. ¶ 4, 392 P.3d 68 (2017).

The district court considered several factors before denying Derek's motion to modify A.S.'s custody. The court noted the move to Alaska would increase travel time and costs if Derek were to visit. But turning to A.S.'s interests, the court determined Derek's FaceTime calls were reasonable; though he sometimes had trouble scheduling those calls, Melissa had worked with Derek as much as she could to make those calls occur. And despite the difficulty in arranging travel plans, Derek had received all his parenting time.

In addition, the court observed that the parties' original parenting plan stated A.S. would live with Melissa and contemplated her subsequent moves, thus implicitly finding—regardless of these moves—that Melissa's residential custody was in A.S.'s best interests. There was no evidence that the moves had a detrimental effect on A.S. And though the move to Alaska might be inconvenient for A.S.'s readjustment and greater distance from Derek in Kansas, the court determined that, given his adjustment after moving to Oregon, the benefits of the current arrangement outweighed the costs of changing A.S.'s primary residence.

While both Derek and Melissa raised valid concerns before the district court as to custody, the court's decision is eminently reasonable and supported by evidence in the record. The court did not abuse its discretion in ruling that Melissa maintain residential custody of A.S.

Derek also claims the district court erred in entering its child-support order—lowering his monthly support obligation but finding he owed $9,280 in unpaid child support dating to 2015. Derek does not assert the district court's decision on either the monthly support or arrearage are incorrect or unsupported by the record. Instead, he claims the court's decision caught him by surprise because more than four months before the custody trial, the parties had submitted an agreed pretrial order indicating child support would be referred to the court trustee before the district court ruled on that issue.

5

Citing K.S.A. 2019 Supp. 60-216(e), Derek claims the court could only modify the earlier order to "prevent manifest injustice."

This argument fails for several reasons. *First*, the assertion conflates the January scheduling order in this case with a "final pretrial order" after a final pretrial conference under K.S.A. 2019 Supp. 60-216(e)—a procedure that did not take place here. *Second*, the argument fails to recognize the district court's authority to manage the proceedings before it and determine how, in the interest of justice and judicial economy, it would reach its decision on the child-support issue—a decision that ultimately rested with the court, not its trustee. See *Harsch v. Miller*, 288 Kan. 280, 288, 200 P.3d 467 (2009) (district courts have broad discretion to manage trials and other proceedings); *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008) (district court has substantial discretion in controlling the proceedings before it); see also *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S. Ct. 163, 81 L. Ed. 153 (1936) (recognizing "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants"). *Third*, the court informed the parties at the close of the custody trial that it had all the information necessary to decide the question of child support and arrearage and intended to promptly enter an order resolving the issue. No one objected to proceeding in this fashion. Derek cannot now claim error after having remained silent before the district court.

As the appellant, Derek bears the burden to demonstrate error in the district court's child-support and arrearage orders. See *Hill v. Farm Bureau Mut. Ins. Co.*, 263 Kan. 703, 706, 952 P.2d 1286 (1998). But he argues no error in the calculation of either matter, and he fails to point to any additional evidence that would have been presented to the court trustee or that would be otherwise necessary to inform the district court's decision. In short, his argument does not apprise us of error. We affirm the district court's judgment.

Affirmed.