NOT DESIGNATED FOR PUBLICATION

No. 124,677

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

SHARON PESINA,
*Appellee,*

v.

AEGIS PROCESSING SOLUTIONS
and
OHIO SECURITY INSURANCE COMPANY,
*Appellants*.

MEMORANDUM OPINION

Appeal from Workers Compensation Board. Opinion filed August 12, 2022. Appeal dismissed.

*Deborah S. Johnson*, of Law Offices of Julie Bhattacharya Peak, of Kansas City, Missouri, for appellants.

*Roger D. Fincher*, of Law Office of Roger Fincher, of Topeka, for appellee.

Before ARNOLD-BURGER, C.J., MALONE and COBLE, JJ.

PER CURIAM: Sharon Pesina alleged that she suffered repetitive injuries to her right and left extremities as a result of her employment with Aegis Processing Solutions. An administrative law judge (ALJ) found that Pesina suffered a 2 percent permanent partial impairment to her right wrist and that no future medical treatment was warranted. The Kansas Workers Compensation Board (Board) partially vacated the award and remanded with instructions to allow the parties to present additional evidence relating to the extent of Pesina's injuries, the extent of her impairment, and the need for future medical treatment. Aegis Processing Solutions and Ohio Security Insurance Company

1

(collectively Aegis) appeal the Board's order. But because we find that judicial review is premature under the current posture of the case, we dismiss the appeal without prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

Pesina was 51 years old when she worked for Aegis from July 2018 to September 2019. Aegis is a company that processes donations for charities. Pesina processed checks—which involved opening boxes and envelopes, handling checks, and sorting checks to remove any that were incorrectly written—for about seven hours in an eight-hour workday. Sometimes, Pesina had to use force to move around boxes filled with checks and to lift and rearrange the boxes. Pesina would lift about 10-20 boxes a day, each weighing about 20 pounds. Pesina also had to push carts with boxes on them. Her job duties also required she use scissors to cut stacks of paper, using her right hand.

Pesina testified she first started to have "trouble" with her hands and arms in August 2018. Her workload increased in October 2018 because of the upcoming holiday season when charitable contributions increased. Her hours increased to 10 hours a day, 6 days a week through March 2019. In December 2018 she started to feel pain and tingling in her hands and wrists. She advised Aegis of her hand and wrist symptoms on January 16, 2019. Pesina applied for workers compensation benefits on February 5, 2019, claiming an accidental injury, repetitive trauma, or occupational disease.

In September 2019, Pesina left Aegis because she "couldn't handle it anymore." After leaving, she began working at Kansas Neurological Institute (KNI), where she cares for developmentally disabled adults. Her duties there require use of both hands while completing her tasks, such as changing people's diapers, giving showers, cooking, and cleaning. Pesina began to experience pain in her elbow in February or March 2020, but she did not notify Aegis of that injury because she was no longer employed there.

*Evaluations by Dr. Bruce and Dr. Divelbiss*

On February 28, 2019, at the request of Aegis, Robert Bruce, M.D., an orthopedic surgeon, performed an independent medical evaluation (IME) and reviewed Pesina's medical records. Bruce testified that about 20 percent of his practice involves hands and upper extremities, and he has been in practice 32 years, treating patients with overuse injuries, fractures, arthritis, and carpal tunnel syndrome. According to Bruce, Pesina reported that she had pain and fatigue in her hands and fingers, bilateral wrist pain, and pain that radiated from her wrist to her elbow. She also reported neck pain, numbness around her thumbs, and tingling and aching in her hands.

Bruce opined, to a reasonable degree of medical certainty, that Pesina's only injury caused by her work at Aegis was transient synovitis in her right wrist. He determined that an EMG (a nerve study used to help diagnose carpal tunnel) was not indicated because Pesina did not have carpal tunnel on either side. He also determined that Pesina was at maximum medical improvement (MMI) status with zero percent impairment. Bruce concluded that Pesina did not need any future medical treatment because of her work injury. He recommended any pain be managed with over-the-counter medication.

On July 2, 2019, Brian Divelbiss, M.D., an orthopedic surgeon, performed a court-ordered IME of Pesina. Divelbiss testified that based on his evaluation, he concluded to a reasonable degree of medical certainty that Pesina's work for Aegis was not the prevailing factor for her symptoms, and that any symptoms or injury that she had were because of aging, gender, or her hypothyroidism, or a combination of those factors. Divelbiss stated he did not confirm his suspicion of carpal tunnel with an EMG because he did not believe Pesina's work activities were the prevailing factor causing her condition; in other words, even if the test resulted positive for carpal tunnel, her work activity would not be the prevailing factor in that diagnosis.

*Dr. Zimmerman's Evaluation*

On February 19, 2020, Daniel D. Zimmerman, M.D., an internal medicine doctor, evaluated Pesina at the request of her counsel. His opinions were offered within a reasonable degree of medical certainty. Zimmerman diagnosed Pesina with injuries of right elbow lateral epicondylitis, chronic tendonitis, right carpal tunnel syndrome, left elbow lateral epicondylitis, and chronic tendonitis affecting the left hand, wrist, and digits with clinical findings consistent with left carpal tunnel syndrome. He took x-rays that showed osteoarthritic change in her right hand, wrist, and digits. He did not take x-rays of her left upper extremity, and he did not perform an EMG. Zimmerman also reviewed Pesina's medical records. He determined that Pesina was at MMI and that no further diagnostic or therapeutic intervention was needed. He concluded that Pesina's future medical treatment would likely involve anti-inflammatory medications, possible injections, and if symptoms worsened, she may need to have an EMG study performed.

Zimmerman found that Pesina's work duties at Aegis were the prevailing factor for her diagnoses. He ruled out Pesina's work at KNI as a factor in her diagnoses because it was his understanding that her work at KNI did not involve such intense use of her upper extremities as her work at Aegis. Zimmerman provided the following impairment ratings, using the Sixth Edition of the American Medical Association Guides (Guide) to the Evaluation of Permanent Impairment:

> "[A] 2 percent impairment of the right elbow due to right elbow lateral epicondylitis. For chronic tendinitis and right carpal tunnel syndrome, Dr. Zimmerman found Ms. Pesina sustained 2 percent permanent partial impairment of the right wrist. These ratings combined to 4 percent impairment of the right upper extremity, or 2 percent whole person impairment. He provided identical ratings for Ms. Pesina's left elbow and left wrist. Overall, Dr. Zimmerman opined Ms. Pesina sustained 4 percent impairment to the whole person under the 6th Edition."

4

*The ALJ's Award*

Pesina submitted her evidence to the ALJ before the deadline of July 31, 2020. On January 8, 2021, while Pesina's claim was still under advisement by the ALJ, the Kansas Supreme Court decided *Johnson v. U.S. Food Service*, 312 Kan. 597, 478 P.3d 776 (2021). Before *Johnson*, Kansas courts interpreted the Workers Compensation Act (the Act) to require the use of the Guide to calculate workers compensation awards. See, e.g., *Pardo v. United Parcel Service*, 56 Kan. App. 2d 1, 10, 422 P.3d 1185 (2018). But in *Johnson*, our Supreme Court determined that the Guide was simply "a standard starting point for the more important and decisive 'competent medical evidence.'" 312 Kan. at 602. The court held that

> "the language added in 2013 does not change the essential legal standard for determining functional impairment. K.S.A. 2019 Supp. 44-510e(a)(2)(B) still requires that ratings be 'established by competent medical evidence.' The 2013 amendments merely reflect an update to the most recent set of guidelines—which serve as a starting point for any medical opinion. K.S.A. 2019 Supp. 44-510e(a)(2)(B) has never dictated that the functional impairment is set by guides. This has not changed. The key fact—percentage of functional impairment—must always be proved by competent medical evidence." 312 Kan. at 603.

On June 7, 2021, the ALJ issued an award to Pesina of a 2 percent permanent impairment of the right wrist for the right upper extremity tenosynovitis. The award referenced Zimmerman's impairment rating under the Guide, but the award did not discuss the Supreme Court's ruling in *Johnson*. The ALJ did not award any permanent impairment for Pesina's "alleged bilateral carpal tunnel." The ALJ also found the evidence was insufficient to award future medical treatment. Finally, the ALJ found that Pesina's elbow injury did not arise out of and in the course of her job with Aegis. Pesina timely applied for a review of this award by the Board.

5

*The Board's Order*

Before the Board, Pesina requested the case be remanded to the ALJ to allow the presentation of additional evidence based on the decision in *Johnson*. On November 30, 2021, a unanimous Board found that Pesina did not notify Aegis of her alleged elbow injuries as required by statute, so any elbow injuries were not eligible for an award. The Board also found that "Pesina experiences chronic tendinitis affecting her hands and wrists as the result of her work-related injury by repetitive trauma."

As for Pesina's request for a remand, a divided Board found that remand to the ALJ was necessary for the presentation of additional evidence before it could determine the nature and extent of her upper extremity impairment. In so finding, the Board relied on another Board decision in *Adam v. Ashby House Ltd.*, No. AP-00-0455-555, 2021 WL 1832461, at *5-6 (Kan. Work. Comp. App. Bd. April 26, 2021). In that case, the Board granted a request for remand for the presentation of additional evidence because the ruling in *Johnson* represented a new interpretation of K.S.A. 44-510e(a)(2)(B), which the parties were in no position to predict. *Adam*, 2021 WL 1832461, at *6. The Board majority in the case at hand agreed with that rationale, and it held that additional evidence was necessary beyond the Guide to assess the nature and extent of Pesina's injuries. One Board member disagreed with the majority on this point and dissented.

Ultimately, the Board vacated the ALJ's Award on the compensability of Pesina's bilateral wrists and forearms, permanent impairment function, and future medical treatment. The Board remanded the case with instructions for the parties

> "to present additional evidence concerning the extent of the injuries Ms. Pesina sustained to both wrists and forearms, the extent of Ms. Pesina's impairment consistent with *Johnson*, and future medical treatment. Upon presentation of the additional evidence the ALJ is instructed to issue a new award addressing the compensability of Ms. Pesina's

alleged bilateral wrist and forearm injuries, the nature and extent of disability, and future medical treatment."

Aegis timely petitioned for judicial review with this court. On appeal, Aegis raises four issues: (1) the Board's decision to remand is null and void because the Board lacked authority to issue the remand and its remaining decision is a final agency action subject to review of this court under K.S.A. 77-607; (2) even if the Board could have remanded the matter, review is proper under K.S.A. 77-608 because postponement of judicial review would result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement; (3) the Board's finding that Pesina's injury is the result of a repetitive work activity at Aegis is not supported by substantial evidence; and (4) the Board's award failed to decide all issues requiring resolution.

Pesina raises a threshold issue that this court lacks jurisdiction to review the Board's order under K.S.A. 77-608 and K.S.A. 77-607 because it is not a final agency action and postponement of judicial review would not result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement. Pesina also asserts that the Board had authority to remand the case to the ALJ for more evidence. Finally, Pesina asserts that the Board's order was not a final determination of her work-related wrist/forearm injuries and her level of permanent impairment. We must first address Pesina's claim that this court lacks jurisdiction to review the Board's order.

DOES THIS COURT HAVE JURISDICTION TO REVIEW THE BOARD'S ORDER?

The Kansas Judicial Review Act (KJRA), K.S.A. 77-601 et seq., governs this court's review of cases arising under the Act, K.S.A. 44-501 et seq. K.S.A. 2020 Supp. 44-556(a). Whether jurisdiction exists is a question of law subject to our unlimited review. *Via Christi Hospitals Wichita v. Kan-Pak*, 310 Kan. 883, 889, 451 P.3d 459

(2019). To the extent resolution of this issue requires statutory interpretation, our review is also unlimited. See *Johnson*, 312 Kan. at 600.

Under K.S.A. 2020 Supp. 44-556(a), a party may appeal a "final order" of the Board in accordance with the KJRA. While the term "final order" is not defined in the Act, the KJRA defines "[f]inal agency action" as "the whole or a part of any agency action other than nonfinal agency action." K.S.A. 77-607(b)(1). "Nonfinal agency action" is defined as "the whole or a part of an agency determination, investigation, proceeding, hearing, conference or other process that the agency intends or is reasonably believed to intend to be preliminary, preparatory, procedural or intermediate with regard to subsequent agency action of that agency or another agency." K.S.A. 77-607(b)(2).

Here, the language of the Board's order demonstrates that the Board intended for the order to be a nonfinal agency action. The Board remanded the case "to present additional evidence concerning the extent of the injuries Ms. Pesina sustained to both wrists and forearms, the extent of Ms. Pesina's impairment consistent with *Johnson*, and future medical treatment." The Board clearly intended its order "to be preliminary, preparatory, procedural or intermediate" in nature. K.S.A. 77-607(b)(2). As a nonfinal agency action, the Board's order generally is not subject to immediate judicial review. See *Williams v. General Electric Company*, 27 Kan. App. 2d 792, Syl. ¶ 2, 9 P.3d 1267 (1999) ("An order of remand from the Workers Compensation Board to an administrative law judge for additional findings of fact is not a final order subject to appellate review absent exceptional circumstances."); *Langvardt v. Innovative Livestock Services*, No. 122,188, 2020 WL 6533264, at *3 (Kan. App. 2020) (unpublished opinion) ("A remand order for the ALJ to conduct further proceedings is an agency determination the Board 'intends or is reasonably believed to intend to be preliminary, preparatory, procedural or intermediate with regard to subsequent agency action.'").

Aegis asserts that the Board's remand was unlawful, so the order is appealable. But under K.S.A. 2020 Supp. 44-551(l)(1) "the board shall have authority to grant or refuse compensation, or to increase or diminish any award of compensation or *to remand any matter to the administrative law judge for further proceedings*." (Emphasis added.) This statute's clear language permits the Board to remand "any matter" to the ALJ for further proceedings. The Board's remand order is not unlawful on its face. Whether the Board *should* have remanded the matter based on the ruling in *Johnson* is a decision that can be reviewed after a final order is entered.

Alternatively, Aegis argues that even if the Board's order were not a final agency action under K.S.A. 77-607, its appeal is proper under K.S.A. 77-608, which allows an interlocutory appeal of a nonfinal agency action in exceptional circumstances only if: "(a) It appears likely that the person will qualify under K.S.A. 77-607 for judicial review of the related final agency action; and (b) postponement of judicial review would result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement." Pesina concedes that the test under K.S.A. 77-608(a) is met, so the question is whether this case satisfies the test under K.S.A. 77-608(b).

Aegis asserts that postponement of judicial review would result in an inadequate remedy or irreparable harm disproportionate to the public benefit derived from postponement for two reasons. First, Aegis argues that "postponement of judicial review will cause irreparable harm because the ALJ will be subjected to unlawful orders from the Board requiring the ALJ to take action for which the ALJ lacks authority." Aegis expresses concern that the "ALJ will then be faced with the dilemma of losing his job or other penalties for failure to comply with an order of the Board." But this conclusory argument that the Board's order is unlawful ignores the fact that K.S.A. 2020 Supp. 44-551(l)(1) allows the Board to remand any matter to the ALJ for further proceedings. On remand, the ALJ must follow the Board's order to allow the parties to present more evidence on the extent of Pesina's injuries. As stated before, whether our Supreme Court's

9

ruling in *Johnson* required or authorized the remand order can be addressed by the courts after a final agency order is entered.

Second, Aegis argues that "there will be no public benefit derived from postponement" of review because further litigation will delay final resolution of Pesina's claim, similar delays will be encouraged for other litigants, and this court will see the same issues raised before it again. But as Pesina points out, the public benefit favors decisions made by courts and administrative agencies based on the merits and with all the information available to the triers of fact. The main controversy between the parties—what compensation Pesina may receive for her work-related injuries—remains unresolved. For all we know, both parties may be satisfied with the ALJ's resolution of the case on remand, rendering any other appeals to the Board or to this court unnecessary. Allowing Aegis to bring its appeal to this court in the current posture of the case "is inconsistent with the clearly stated Kansas policy to avoid piecemeal appeals." *Harsch v. Miller*, 288 Kan. 280, 288, 200 P.3d 467 (2009).

To summarize, the Board remanded this case to the ALJ for further proceedings, rendering its order a nonfinal agency action under K.S.A. 77-607. We lack jurisdiction to review a nonfinal agency action unless the requirements of K.S.A. 77-608 are satisfied. Those requirements are not satisfied. Whether we base our ruling on lack of jurisdiction, ripeness for judicial review, or the policy of Kansas appellate courts to avoid piecemeal appeals, we find that Aegis' appeal to this court is premature under the current posture of the case. The case can be returned to this court after the Board has entered a final order addressing the merits of the controversy between the parties, and we will address all issues at one time. For these reasons, we dismiss Aegis' appeal without prejudice.

Appeal dismissed.