NOT DESIGNATED FOR PUBLICATION

Nos. 117,932
118,360

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of

TONY BIEHL,
*Appellee*,

and

SHEILA KAY VANDELOECHT,
*Appellant*,

and

ALAN BENNETT,
*Intervenor/Appellee*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC A. COMMER, judge. Opinion filed May 11, 2018. Appeal dismissed.

*Ashley L. Wiechman*, of Law Office of Robert D. Wiechman, Jr., of Wichita, for appellant.

*Kevin J. Zolotor* and *Morgan O'Hara Gering*, of O'Hara & O'Hara LLC, of Wichita, for appellee Tony Biehl.

*Grant A. Brazill*, of Morris, Laing, Evans, Brock & Kennedy, Chartered, of Wichita, for Alan Bennett, intervenor/appellee.

Before MALONE, P.J., BUSER and GARDNER, JJ.

PER CURIAM: This is an appeal from a paternity action. Sheila Kay Vandeloecht was dating her boyfriend Alan Bennett at the time she gave birth to her daughter. When the child was born, Bennett signed a document acknowledging paternity under the belief that he was her biological father. However, after Bennett obtained genetic testing which revealed that he was not the child's biological father, Tony Biehl filed a petition to determine paternity and alleged that he was the child's biological father.

During the paternity action, the parties signed an agreed journal entry of paternity which named Biehl as the legal father. The journal entry was then approved by the district court. A few months later, Vandeloecht sought to set aside the journal entry of paternity, which the district court denied. Subsequently, after the district court denied Vandeloecht's motion to alter or amend judgment or for new trial, the district court awarded attorney fees to Bennett and Biehl. Vandeloecht appeals from these orders. During this appeal, the unresolved matters of child custody, residential custody, parenting time, and child support have continued to be the subject of district court proceedings.

Upon our review, we hold the district court did not enter a final decision generally disposing of the entire merits of this paternity case and leaving no further questions or the possibility of future directions or actions by the district court. See K.S.A. 2017 Supp. 60-2102(a)(4); *Kaelter v. Sokol*, 301 Kan. 247, Syl. ¶ 2, 340 P.3d 1210 (2015). Accordingly, we dismiss the appeal for lack of appellate jurisdiction.

FACTUAL AND PROCEDURAL BACKGROUND

The child involved in this paternity action was born in the summer of 2014. The child's mother, Vandeloecht, was not married during the nine months prior to the child's birth. When the child was born, Vandeloecht and Bennett were involved in a dating relationship, and Bennett believed that he was the child's biological father.

2

After the child was born, Bennett signed documents which requested that his name be placed on the child's birth certificate as her father. Genetic testing in October 2014 revealed there was a zero percent probability that Bennett was the child's biological father. After receiving the test results, Bennett and Vandeloecht ended their relationship.

In June 2015, 11 days before the child turned 1 year old, Biehl filed a petition to determine paternity claiming to be the child's biological father. Included in his petition was a proposed parenting plan in which Biehl sought joint legal custody and shared residential custody of the child. In his petition, Biehl sought the following relief:

> "[T]he Petitioner prays that the Court make a finding that Petitioner is the natural and legal father of the minor child . . . for the parties to be granted joint legal custody of the minor child; for the parties to be awarded shared residential custody of the minor child; for the parties to share equally all expenses incurred on behalf of the minor child; [and] for the parties to share in expenses incurred for unreimbursed medical/dental/health expenses incurred on behalf of the minor child."

In Vandeloecht's answer, she denied that Biehl was the child's father and requested court-ordered genetic testing. Vandeloecht also denied that it was in the child's best interest for Biehl to have custody or any parenting time. She asked the district court to determine that Biehl was not the child's biological father, but that if he was, that Biehl "receive no parenting time or custody of the minor child, but that [Biehl] shall pay child support to [Vandeloecht]."

Shortly thereafter, Bennett filed a motion to intervene in the paternity action. In Bennett's pleading he acknowledged that he was the presumed father of J.B. "as he recognized paternity in writing at the time of the minor child's birth, and is listed as the minor child's father on the birth certificate." Bennett argued the October 2014 genetic test results, however, served as "clear and convincing evidence to rebut the presumption of paternity." Bennett asked the district court to terminate his presumption of paternity and

3

determine that Biehl is the biological father of the child. Bennett's motion to intervene was granted and his answer was filed.

In August 2015, Biehl filed a motion for court-ordered genetic testing, which was set for a hearing on August 25, 2015. The parties dispute whether a hearing on Biehl's motion occurred on that date. Although there is no record of the hearing, the minute sheet from August 25, 2015, relating to Biehl's motion for genetic testing memorialized the disposition: "[Biehl] withdraws motion and will prepare order establishing paternity."

In September 2015, Bennett filed a notice of genetic testing results and argued that the results of his October 2014 genetic test established that he was not the biological father. Bennett stated: "All parties have agreed to the paternity of the minor child, that [Bennett] is not the child's father thus terminating any presumption of paternity, and a journal entry setting out the same shall be filed with the Court."

That same month, Biehl filed a motion for parenting time and incorporated a proposed parenting plan. Biehl again requested joint legal custody and eventual shared residential custody of the child. At the hearing on the motion, Biehl's counsel acknowledged that Biehl had a 2004 conviction for abuse of a child, which stemmed from an inappropriate sexual relationship with a child who was 14 or 15 years old when Biehl was 21 or 22 years old. Biehl's counsel maintained, however, that he should have parenting time in this case because he had primary residential custody of another daughter.

Vandeloecht's counsel responded that Vandeloecht was "admittedly opposed to Mr. Biehl having any parenting time." Counsel alleged that the child was conceived as a result of Vandeloecht having nonconsensual sexual intercourse with Biehl. Moreover, Vandeloecht's counsel argued that it was not in the child's best interest to grant Biehl any parenting time without first holding an evidentiary hearing.

4

Upon learning that there had not been an adjudication of paternity, the district court denied Biehl's motion seeking parenting time until there was an adjudication of paternity. The district court then scheduled an evidentiary hearing on the child's paternity.

On December 14, 2015, a journal entry of paternity memorializing the August 25, 2015 agreement between the parties was filed. The journal entry of paternity was signed as approved by all parties' counsel and was also signed by the district judge. The journal entry ordered that Biehl "shall be and for all purposes is hereby determined to be the natural and legal father of the minor child, born in 2014." The journal entry concluded: "The Court reserves all related issues as appropriate under this action, including but not limited to, custody, parenting time, child support, and the minor's tax exemption for future consideration." After the journal entry of paternity was filed, Bennett's name was removed from the child's birth certificate.

In April 2016, Vandeloecht filed a motion to set aside the journal entry of paternity. Two months later, in June 2016, Vandeloecht filed an amended motion. Following a conference with the district court, a pretrial conference order was filed on August 22, 2016, which listed 18 issues to be determined at a hearing on Vandeloecht's amended motion to set aside the journal entry of paternity. In the pretrial conference order, Vandeloecht and Biehl both contended that the journal entry of paternity should be set aside. The matter was scheduled for a hearing on December 15, 2016. In the interim, Bennett filed a motion to revoke his acknowledgement of paternity.

On December 15, 2016, a hearing was held on Vandeloecht's motion to set aside the journal entry of paternity. The parties stipulated to certain facts; however, Bennett refused to stipulate that he signed an acknowledgement of paternity, and he only stipulated that he had signed documents that caused his name to be placed on J.B.'s birth certificate. For his part, Biehl advised that, contrary to his position stated in the pretrial conference order, he now contended the journal entry of paternity should not be set aside.

5

At the December 15, 2016 hearing, Vandeloecht argued that the journal entry of paternity "should be set aside pursuant to K.S.A. 60-260(b)(4), because it is void, or in the alternative, pursuant to K.S.A. 60-260(b)(6), for at least four independent reasons." Vandeloecht argued: (1) the district court failed to conduct a hearing and determine whether it was in the child's best interests to allow Bennett's presumption of paternity be rebutted; (2) the district court failed to conduct a competing presumption hearing under K.S.A. 23-2208(c); (3) the child's due process right in her parentage was affected without giving her notice and an opportunity to be heard because a guardian ad litem was not appointed to represent her best interests; and (4) parties may not bind a child to an agreement to paternity in a disputed parentage action absent a judicial finding that the agreement is in the best interests of the child after a hearing pursuant to *In re Marriage of Ross*, 245 Kan. 591, 783 P.2d 331 (1989).

On March 22, 2017, the district court filed an 18-page memorandum and order denying Vandeloecht's motion to set aside the journal entry of paternity. The district court also granted Bennett's motion to revoke his acknowledgement of paternity. At the conclusion of the memorandum and order, the district court set the matter for hearing "to address the remaining issues of child support, child's income tax exemption, custody and parenting time." To facilitate the hearing, the district court also ordered Biehl and Vandeloecht to exchange W-2 forms and tax returns, and to "file their proposed current Child Support Worksheets to allow the Family Court to address the remaining issues."

On April 17, 2017, Vandeloecht filed a motion to alter or amend the order filed on March 22, 2017, or set the matter for a new trial. In this motion, she alleged 16 trial errors. After a hearing, the district court denied Vandeloecht's motion to alter or amend.

Vandeloecht filed her initial notice of appeal on June 19, 2017. After that appeal was docketed, the district court awarded certain attorney fees to counsel for Biehl and

6

Bennett. Vandeloecht also appealed that order. Both appeals were consolidated for our review.

Following docketing of the appeal with our court, Vandeloecht filed a motion in district court to stay proceedings in that court pending the outcome of this appeal. Vandeloecht argued that the district court "should stay proceedings because of the possibility of conflicting orders and resulting chaos in this matter." The district court denied the motion.

Biehl moved to involuntarily dismiss the appeal for lack of appellate jurisdiction. That motion was opposed by Vandeloecht. In considering the motion for involuntary dismissal, our motions panel noted there was in the district court a "pending motion for permanent custody and parenting time orders. . . . And while it appears that a substantive issue remained before the district court, at this time we are unwilling to definitively rule that the judgment being appealed is not final." The parties were directed to address the issue of jurisdiction in their appellate briefing.

At oral arguments on April 17, 2018, our court was advised that this case is set for a two-day trial on June 20, 2018, to adjudicate the unresolved matters of child custody, residential custody, parenting time, and child support.

After oral arguments, Bennett, Biehl, and Vandeloecht filed motions with our court for appellate attorney fees. We will consider the motions.

LACK OF APPELLATE JURISDICTION

Whether jurisdiction exists is a question of law over which our court's scope of review is unlimited. *Fuller v. State*, 303 Kan. 478, 492, 363 P.3d 373 (2015). While all the parties now ask this court to exercise jurisdiction over Vandeloecht's appeal, parties

7

may not confer subject matter jurisdiction by consent, waiver, or estoppel. *Goldman v. University of Kansas*, 52 Kan. App. 2d 222, 225, 365 P.3d 435 (2015). Our court only has appellate jurisdiction as provided by statute; in the absence of statutory authority, we have a duty to dismiss the appeal. *Jenkins v. Chicago Pacific Corp.*, 306 Kan. 1305, 1308, 403 P.3d 1213 (2017).

At the outset, no party suggests that this appeal is authorized as an interlocutory appeal under K.S.A. 2017 Supp. 60-2102(c). Moreover, there is no suggestion that the district court certified the entry of judgment under K.S.A. 2017 Supp. 60-254(b). In this regard, a district court that intends to enter final judgment on less than all claims must expressly certify in the original journal entry that there is no just reason for delay, as well as expressly determine that the entry of judgment is a final judgment. *Goldman*, 52 Kan. App. 2d at 230. Instead, all parties now contend that our court has appellate jurisdiction to consider and decide this appeal because this is a final decision or the collateral order doctrine applies.

Relevant to this case, K.S.A. 2017 Supp. 60-2102(a)(4) provides that "the appellate jurisdiction of the court of appeals may be invoked by appeal as a matter of right from . . . [a] *final decision in any action*." (Emphasis added.)

> "A 'final decision' generally disposes of the entire merits of a case and leaves no further questions or possibilities for future directions or actions by the lower court. The term 'final decision' is self-defining and refers to an order that definitely terminates a right or liability involved in an action or that grants or refuses a remedy as a terminal act in the case. [Citation omitted.]" *Kaelter*, 301 Kan. at 249-50.

The jurisdictional issue presented in this appeal is whether the district court's rulings on paternity constitute a final decision given the remaining undecided matters of child custody, residential custody, parenting time, and child support. As summarized in the Factual and Procedural Background, from the filing of this paternity action through

8

the oral arguments relating to this appeal, while the issue of paternity has been finally determined by the district court, there still remains unresolved important matters of child custody, residential custody, parenting time, and child support.

Under these circumstances, Kansas law provides: "When a district court bifurcates an action and delays ruling on some part of the matter before it, the case usually becomes ripe for appeal only when the district court enters final judgment on all pending issues." *In re Adoption of Baby Girl P.*, 291 Kan. 424, 429, 242 P.3d 1168 (2010). In the context of a divorce action, for example, our court has held:

> "A divorce action combines several claims—potentially for child support, child custody, parenting time, maintenance, and property division—into a single cause of action. Unless some of those are left undecided, the divorce decree is a final judgment. See *McCain v. McCain*, 219 Kan. 780, 549 P.2d 896 (1976) (holding that divorce rulings are final and appealable only when court has both granted divorce and resolved all other issues in the case, such as child custody and property division)." *State v. Hendricks*, 52 Kan. App. 2d 737, 739, 372 P.3d 437 (2016).

With specific reference to paternity actions, the subject matter presented on appeal: "A paternity proceeding determines who a child's legal father is and, therefore, who will enjoy the rights and responsibilities of legal parenthood." *Greer v. Greer*, 50 Kan. App. 2d 180, 185, 324 P.3d 310 (2014). However, like a divorce action, a paternity action combines several other claims. In particular, K.S.A. 2017 Supp. 23-2215(c), (d) provides:

> "(c) Upon adjudging that a party is the parent of a minor child, the court shall make provision for support and education of the child under article 30 of chapter 23 of the Kansas Statutes Annotated, and amendments thereto. The court may order the payment of all or a portion of the necessary medical expenses incident to the child's birth. The court may order the support and education expenses to be paid by either or both parents for the minor child.

9

"(d) If both parents are parties to the action, the court shall enter such orders regarding custody, residency and parenting time as the court considers to be in the best interest of the child."

In short, K.S.A. 2017 Supp. 23-2215(c), (d) makes clear that under Kansas law, the determination of a child's legal father is only one of several issues to be addressed in a paternity cause of action.

Kansas caselaw has discussed the parameters of appellate jurisdiction in relation to K.S.A. 2017 Supp. 23-2215(c), (d). In circumstances very similar to this case on appeal, Kansas appellate courts have found no jurisdiction because the judgment in a paternity action was not a final decision. *Kaelter*, 301 Kan. at 248-50; *State ex rel. Secretary of SRS v. Chippeaux*, No. 98,530, 2008 WL 2510580, at *3 (Kan. App. 2008) (unpublished opinion).

In *Kaelter*, our Supreme Court held that a judgment did not constitute a final decision in an action for paternity, custody, support, and a division of the parties' assets. 301 Kan. at 250. Importantly, the district court's judgment included an order that the legal father pay a sum representing the minor child's unreimbursed medical expenses. On reconsideration, however, the district court decided to leave the issue of the appropriate division of unreimbursed medical expenses unresolved. Similar to the present case, the journal entry in *Kaelter* anticipated future proceedings (including discovery) in the district court regarding the unreimbursed medical expenses. At the time of oral arguments in *Kaelter*, this issue still remained undetermined. The legal father appealed to our court from the district court's rulings in the paternity case. Our court affirmed.

Upon the granting of a petition for review, our Supreme Court dismissed the appeal. It held the Court of Appeals did not have appellate jurisdiction to review and affirm the district court. In particular, our court lacked jurisdiction in *Kaelter* because

10

"the district court did not enter a final decision, having left unresolved the unreimbursed medical expenses issue." 301 Kan. at 250.

Our court has also considered the propriety of appellate jurisdiction in a paternity case in *Chippeaux*. In that case, the Department of Social and Rehabilitation Services (SRS) brought an action for support of a minor child against Chippeaux, who had signed an acknowledgement of paternity. After Chippeaux denied paternity, a pretrial order was prepared which identified various issues of fact and law such as paternity, custody, parenting time, child support, reimbursement of birth expenses, and cash assistance.

The district court determined that Chippeaux was the legal father and he could not challenge his acknowledgment of paternity through genetic testing. There remained, however, a dispute regarding the calculation of child support. In an attempt to facilitate an immediate appeal to our court, the district court filed an order which stated:

> "'There remains a dispute regarding the amount, duration and calculation of the child support amount . . . and these issues have not been heard by the Court and remain in dispute. Pursuant to K.S.A. 60-254(b) the court directs the entry of final judgment . . . on the issues determined by this Court today, specifically that [Chippeaux] is the legal father of the child. The Court determines that there is no just reason for delay on entry of final judgment on that issue, and expressly directs that this Order be a final judgment as to that issue.'" 2008 WL 2510580, at *2.

Our court issued a show cause order pointing out that certification under K.S.A. 60-254(b) "'cannot render a judgment final which is not actually a final judgment.'" 2008 WL 2510580, at *2. In his response, Chippeaux acknowledged there were still issues before the district court but argued, "[a]ll of these issues are contingent upon whether Chippeaux is even the father of this child. If Chippeaux is not the father, then none of the above issues, including child support, are relevant.'" 2008 WL 2510580, at *2.

11

Our court rejected the district court's 60-254(b) finding, stating that 60-254(b) only applies to claims *for relief*. Notably, SRS did not plead Chippeaux' paternity as a claim for relief in that case. The only relief SRS sought was reimbursement for child support. See 2008 WL 2510580, at *3. Of course, in the present case, there was not even a finding by the district court of a final judgment under 60-254(b). But Chippeaux is still relevant for its reiteration of the long-standing principle that "'piecemeal appeals are undesirable.'" 2008 WL 2510580, at *4.

We acknowledge Vandeloecht's argument that our court in *In re Adoption of A.A.T.*, 42 Kan. App. 2d 1, 6, 210 P.3d 640 (2006), determined that it had jurisdiction in a Chapter 59 action to set aside an adoption over a district court's ruling that a best interests of the child hearing was not a prerequisite to a paternity test. The court in *In re Adoption of A.A.T.* declined to dismiss the appeal, in relevant part because:

"*Ross* suggested that the issue of paternity determination is to be treated differently. . . . [T]he court observed that once a paternity test is conducted, the results cannot be undone, *i.e.,* the bell cannot be unrung. The opinion certainly intimates that the Supreme Court would hear an interim appeal on that issue." 42 Kan. App. 2d at 6.

The facts in the present case differ from those in *In re Adoption of A.A.T.*, where the district court found that a *Ross* hearing was not required before a genetic test could be performed. Here, there is no impending genetic testing to be performed and the action evidencing paternity—the agreed journal entry of paternity—has already taken place. Like the denial of paternity testing in *Chippeaux*, the district court's denial of Vandeloecht's motions to set aside the agreed journal entry of paternity was a refusal to change the status quo. In other words, there is no bell about to be rung which cannot be unrung.

12

Vandeloecht also asserts that matters related to child custody and child support may be modified until the child reaches 18 years of age. See 2 Elrod, Kansas Law and Practice: Kansas Family Law § 12:32 (2017-2018 ed.) ("Matters relating to child custody and child support may be modified throughout the child's minority according to the child's 'best interests.'"). However, what precludes our court's jurisdiction in this case is that no determination of child custody and child support has been made, not that such a determination, when made, may be modified during the child's minority.

For his part, Bennett argues that even if the district court's orders were not reviewable as a final decision under K.S.A. 2017 Supp. 60-2102(a)(4), they may be reviewable under the collateral order doctrine. The collateral order doctrine is a narrow exception to the final decision requirement for appellate jurisdiction. *Harsch v. Miller*, 288 Kan. 280, 290, 200 P.3d 467 (2009). Our Supreme Court has instructed that the collateral order doctrine is to be used sparingly. *In re T.S.W.*, 294 Kan. 423, 434, 276 P.3d 133 (2012).

An order may be collaterally appealable only if it "(1) conclusively determines the disputed question, (2) resolves an important issue completely separate from the merits of the action, and (3) is effectively unreviewable on appeal from a final judgment." 294 Kan. at 434. In this case, the denial of Vandeloecht's motion to set aside the journal entry of paternity and motion to alter or amend conclusively determined that the journal entry of paternity would remain the order of the court and Biehl would be named the legal father of the child.

As to the second factor of the collateral order doctrine, however, the district court's orders refusing to set aside the journal entry of paternity do not resolve an issue completely separate from the merits of the action. To demonstrate that the issue is separate from the merits of the action, it must be shown that the issues to be reviewed have no bearing on the merits of the cause of action. See *Mitchell v. Forsyth*, 472 U.S.

13

511, 527-28, 105 S. Ct. 2806, 86 L. Ed. 2d 411 (1985) (a claim for immunity for official conduct is separate from the merits of whether a plaintiff's rights have been violated); *Flanagan v. United States*, 465 U.S. 259, 266, 104 S. Ct. 1051, 79 L. Ed. 2d 288 (1984) (issue of double jeopardy is immediately appealable because it has no bearing on the merits of the cause of action, but instead is a distinct and separate issue). In this case, the order establishing paternity is not separate from or has no bearing on the merits of which parent will obtain legal custody, residential custody, parenting time, and child support.

Moreover, the third factor of the doctrine does not apply. Bennett argues "[i]f the parties were required to wait until issues of custody and support were resolved, the identity of the legal father would be effectively unreviewable, as custody and support issues remain modifiable until a child reaches the age of majority." However, Bennett fails to address how the issue of paternity is effectively unreviewable on appeal from a final judgment on an initial award of custody and support. See *Hendricks*, 52 Kan. App. 2d at 740 (an order resolving all pending claims is a final and "appealable judgment even though the court necessarily retains jurisdiction to enter orders of modification related to any children"). We are persuaded that the collateral order doctrine does not apply to impart appellate jurisdiction.

In sum, the district court's order was not a final decision, neither party has applied for an interlocutory appeal, the district court did not certify the entry of judgment under K.S.A. 2017 Supp. 60-254(b), and the collateral order doctrine does not apply. Accordingly, we dismiss the appeal for lack of appellate jurisdiction.

Finally, with regard to the district court's award of attorney fees to counsel for Biehl and Bennett which has been appealed, applying the same reasons as discussed earlier, we dismiss the appeal for lack of appellate jurisdiction. Additionally, the motions for appellate attorney fees filed by Bennett, Biehl, and Vandeloecht are considered and similarly denied for lack of jurisdiction.

14

Appeal dismissed.